# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date: October 23, 2017**

**NO. S-1-SC-34630**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**JOHN ERIC OCHOA,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Stephen Bridgforth, District Judge**

Hector H. Balderas, Attorney General
Sri Mullis, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Respondent

# OPINION

**VIGIL, Justice.**

{1} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution. Defendant was arrested on May 12, 2008, and charged with a number of offenses relating to criminal sexual contact of a minor. Prior to a mistrial on March 8, 2010, trial was delayed for a number of reasons including a furlough affecting the New Mexico Public Defender Department (Public Defender Department). Two months later, on May 17-20, 2010, Defendant was convicted of one count of interference with communications and two counts of criminal sexual contact of a minor. Defendant was incarcerated for the entire pretrial period.

{2} Defendant appealed his convictions and the Court of Appeals reversed on speedy trial grounds. *State v. Ochoa*, 2014-NMCA-065, ¶¶ 1, 25-26, 327 P.3d 1102. The Court of Appeals determined that Defendant was prejudiced by his two-year pretrial incarceration, reasoning that "[t]his Court previously concluded that a delay of twenty-two months prejudiced a defendant. Here, Defendant was incarcerated even longer." *Id.* ¶ 23 (citation omitted).

{3} We granted certiorari and reverse, applying the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514, 530 (1972). We conclude that neither the length of

delay, reason for delay, nor assertion of the right to a speedy trial weigh heavily in Defendant's favor. We presume that Defendant suffered some prejudice as a result of his continuous pretrial incarceration, but our presumption does not outweigh the other three factors. *See State v. Garza*, 2009-NMSC-038, ¶ 1, 212 P.3d 387 (holding that a defendant must generally show particularized prejudice). Thus, despite the obvious prejudice to Defendant, his right to a speedy trial was not violated.

## I.     BACKGROUND

### A.     The Right to a Speedy Trial

{4}     In examining whether a defendant has been deprived of his constitutional right to a speedy trial, we use the four-factor test set forth in *Barker*, balancing the length of delay, the reason for delay, the defendant's assertion of the right to a speedy trial, and the prejudice to the defendant. *See* 407 U.S. at 530. We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo. *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272.

{5}     The speedy trial analysis is not a rigid or mechanical exercise, but rather "a difficult and sensitive balancing process." *See Barker*, 407 U.S. at 533. The speedy trial right is "amorphous, slippery, and necessarily relative." *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (internal quotation marks and citations omitted). We consider the

factors on a case-by-case basis. *See Barker*, 407 U.S. at 533; *see also Garza*, 2009-NMSC-038, ¶ 13 (stating that *Barker* "necessarily compels courts to approach speedy trial cases on an ad hoc basis").

**B.      Timeline**

{6}      We begin by setting forth the facts and circumstances surrounding the delays in bringing Defendant to trial and the role of each party in the delays. *Barker*, 407 U.S. at 530 ("The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed."). Defendant was arrested on May 12, 2008 and tried just over two years later, on May 17-20, 2010. Defendant was incarcerated for this entire period.

{7}      Trial was reset on multiple occasions. The first, November 10, 2008, was vacated because November 11, 2008 was a holiday and the trial required a multi-day setting. The second, December 17, 2008, was vacated when Defendant requested a continuance to review evidence acquired in delayed witness interviews. The third, March 4, 2009, was vacated due to a pending motion.[1] The fourth, May 26, 2009, was

---

[1]Although the district court did not explain why this setting was vacated, the State asserted that it was vacated due to a "pending motion yet to be heard," most likely referring to Defendant's motion to sever, demand for discovery, motion to dismiss the indictment, or motion to compel disclosure filed between November 21, 2008 and December 5, 2008. Defendant also filed a motion for an evidentiary hearing

3

vacated because it was incorrectly set for one day. The fifth, October 27, 2009, was unexpectedly continued when the judge's sister passed away.

{8}     Defendant moved to continue the sixth trial setting, January 13, 2010, because Governor Richardson ordered state employees to cease work for five days, including the third day of trial. The furlough reduced the budget of the Public Defender Department due to a budget shortfall for fiscal year 2010. Despite the furlough, this Court ordered public defenders to appear for regularly scheduled court appearances. The district court granted the continuance to ensure that defense counsel had adequate support staff to prepare a defense. Trial finally began on the seventh setting, March 8, 2010. However, the district court granted a mistrial because a juror made an inflammatory comment.

{9}     Over the course of the proceedings, the State filed three petitions to extend the time to commence trial. *See* Rule 5-604(B) NMRA (2008) ("For good cause shown, the time for commencement of trial may be extended by the district court . . . [by] six (6) months."). Defendant opposed two out of three of the State's petitions, but did not

and forensic evaluation to determine witness competency on January 20, 2009. The State filed two requests to extend the time to respond to those motions, which were both granted. The district court held a hearing on Defendant's motions on February 2, 2009, but did not issue orders until March 5, 2009, May 5, 2009, October 26, 2009, and November 9, 2009.

file substantive responses to any of them. Each of the petitions was granted.

{10} Defendant filed five demands for a speedy trial and four motions to dismiss based on violation of the right.[2] In its ruling on the first motion to dismiss, the district court found the case to be complex and that the length of pretrial delay was less than the eighteen months required to trigger the speedy trial analysis under *Garza*. *See* 2009-NMSC-038, ¶ 2 (establishing the guideline as eighteen months for complex cases). In each motion to dismiss, Defendant stated that the length of pretrial incarceration was presumptively prejudicial, he had suffered undue anxiety and concern, and his defense was impaired by fading witness memories. Defendant did not present evidence to support his prejudice claims, but instead asserted that the State bore the burden of proving the absence of prejudice, citing *Salandre v. State*, 1991-NMSC-016, ¶¶ 25-28, 111 N.M. 422, 806 P.2d 562, *holding modified by Garza*, 2009-NMSC-038, ¶ 22.

{11} Defendant was finally tried on May 17-20, 2010, after two years of pretrial incarceration. On May 20, 2010, a jury convicted Defendant of two counts of criminal

---

[2]Defendant filed the first of five demands for a speedy trial on January 28, 2009, followed by demands on June 22, 2009, September 9, 2009, September 17, 2009, and November 23, 2009. Defendant filed his first motion to dismiss for violation of the right to a speedy trial on September 15, 2009, followed by motions on December 28, 2009, February 11, 2010, and April 20, 2010.

sexual contact of a minor and one count of interference with communications. Defendant appealed, and the Court of Appeals reversed, holding that Defendant's right to a speedy trial was violated. *Ochoa*, 2014-NMCA-065, ¶ 1. We granted certiorari on two issues:

> 1) Whether the Court of Appeals erred in holding that [the State denied Defendant] his constitutional right to a speedy trial when the length and reasons for the delay did not weigh heavily against [the State].

> 2) Whether the Court of Appeals erred in creating a bright-line rule that pre-trial incarceration over twenty-two months is unduly prejudicial even when [Defendant] failed to make a particularized showing of prejudice.

Applying the fluid, ad hoc approach of *Barker* to the facts of the instant case, we agree with the Court of Appeals that Defendant was prejudiced by his pretrial incarceration. However, neither the length nor reason for delay weighs heavily against the State. Therefore, we conclude that Defendant's right to a speedy trial was not violated.

## II. DISCUSSION

### A. Length of Delay

{12}    The first factor, length of delay, is both the threshold question in the speedy trial analysis and a factor to be weighed with the other three *Barker* factors. *State v.*

6

*Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. The *Barker* Court deferred to the states to prescribe reasonable guidelines for bringing a case to trial. 407 U.S. at 523. This Court prescribed such guidelines in *Garza*. *See* 2009-NMSC-038, ¶ 2. The applicable guideline is dependent upon the complexity of the case: twelve months for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. *Id.*

{13}　　Consistent with *Barker*, this Court in *Garza* emphasized that the guidelines are not bright-line tests. *See Barker*, 407 U.S. at 523 ("We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months."); *see also Garza*, 2009-NMSC-038, ¶ 49 (explaining that the guidelines are not bright-line tests). The guidelines are designed to prompt the district court to conduct a speedy trial analysis, and do not dispose of the claim itself. *Id.* ¶ 2. As explained in *Garza*, it would be contrary to the flexible, fact-specific nature of the *Barker* approach to presume that there was a violation of the right based on the length of delay alone. *See Garza*, 2009-NMSC-038, ¶ 13. The *Barker* Court "specifically reject[ed] inflexible, bright-line approaches to analyzing a speedy trial claim." *Garza*, 2009-NMSC-038, ¶ 13 (citing *Barker*, 407 U.S. at 529-30).

{14}　　When the length of delay exceeds a guideline, it must be weighed as one factor

7

in determining whether there has been a violation of the right to a speedy trial, *Serros*, 2016-NMSC-008, ¶ 22, and the burden of persuasion rests on the State to demonstrate that, on balance, there was no violation of the right to a speedy trial. *Garza*, 2009-NMSC-038, ¶ 22. As the delay lengthens, it weighs increasingly in favor of the accused. *Id.* ¶ 24. In other words, a delay barely crossing the guideline "is of little help" to the defendant's claim, while a delay of extraordinary length weighs heavily in favor of the defendant. *Serros*, 2016-NMSC-008, ¶ 26.

{15} We defer to the district court's finding of complexity,[3] which was supported by the number of charges and nature of the allegations. *See State v. Manzanares*, 1996-NMSC-028, ¶ 9, 121 N.M. 798, 918 P.2d 714; *see also State v. Rojo*, 1999-NMSC-001, ¶ 52, 126 N.M. 438, 971 P.2d 829 (explaining that the complexity of the case is best determined by the district court, which must consider both the nature and complexity of the crime). This was a complex case which, under *Garza*, should have been brought to trial within eighteen months. *See* 2009-NMSC-038, ¶ 2.

{16} Defendant was arrested on May 12, 2008. Twenty-two months later, the first

---

[3]Defendant faced one count of kidnapping, two counts of attempt to commit criminal sexual penetration in the first degree (child under thirteen), one count of interference with communications, ten counts of criminal sexual contact of a minor in the second degree (child under thirteen), and two counts of criminal sexual contact of a minor in the third degree (child under thirteen).

trial resulted in a mistrial. This period alone was sufficient to raise speedy trial concerns, unlike cases in which the mistrial occurred within the speedy trial guideline. *See, e.g.*, *State v. Castro*, 2017-NMSC-027, ¶ 20, __ P.3d __ (noting that the mistrial occurred within the prescribed period for a simple case). By the time of the retrial on May 17-20, 2010, the case had been pending for a total of two years; six months past the *Garza* deadline. *See* 2009-NMSC-038, ¶ 48.

{17} Nevertheless, while sufficient to trigger the speedy trial analysis, the two-year delay was not extraordinary. *See, e.g.*, *Serros*, 2016-NMSC-008, ¶ 24 (holding that a delay of four years and three months was extraordinary and weighed heavily in the defendant's favor); *see also Doggett v. United States*, 505 U.S. 647 (1992), 657-58 (describing an eight and one-half year delay between the defendant's indictment and arrest as extraordinary). Thus, the length of delay weighs only slightly against the State.

**B.    Reason for the Delay**

{18} The second *Barker* factor requires us to evaluate the reason for the delay. 407 U.S. at 530-31. We begin by calling to mind the three types of delay identified in *Barker*. *See id.* at 531. First, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* Second,

9

negligent or administrative delay weighs less heavily but nevertheless weighs against the State because "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* Third, neutral delay, or delay justified by a valid reason, does not weigh against either party. *See id.* (stating that "a valid reason . . . should serve to justify appropriate delay"); *see also State v. O'Neal*, 2009-NMCA-020, ¶¶ 20-21, 145 N.M. 604, 203 P.3d 135 (describing a mistrial and inclement weather as "purely neutral circumstances" and holding that the resulting delays did not weigh against either party). In addition, delay initiated by defense counsel generally weighs against the defendant. *See Serros*, 2016-NMSC-008, ¶ 46 ("[T]he actions of defense counsel ordinarily are attributable to the defendant.").

{19}    Because there was a mistrial in this case, the pre-trial delay falls into two separate periods. Before the mistrial, trial was postponed for a number of reasons, including a furlough affecting the New Mexico Public Defender Department (Public Defender Department). The mistrial itself caused an additional two months of delay, what we determine to be a reasonable length of time. For reasons we explain below, we determine that the delay was primarily neutral and administrative.

**1.    Pre-Mistrial delay**

**a.      Eighteen months of administrative delay**

{20}      The first four trial settings were postponed for administrative reasons, resulting in nearly eighteen months of pretrial delay.

{21}      The prosecution moved along expeditiously for the first six months following Defendant's arrest.[4] The delays began when the district court vacated the first trial setting of November 10, 2008 because the second day of trial fell on a state holiday. This resulted in a one-month delay. The district court then vacated the second trial setting of December 17, 2008 to allow Defendant to conduct witness interviews. This caused a delay of two and one-half months. The district court vacated the third trial setting of March 4, 2009 due to a pending motion. This resulted in a three-month delay. The district court continued the fourth setting of May 26, 2009 because the trial was set for only one day instead of three days. This led to a five-month delay.

{22}      The State argues that, because Defendant asked the district court to vacate the

---

[4]For the reader's convenience, periods of delay are rounded to the nearest half month. The respective periods of delay are May 12, 2008 to November 10, 2008 (five months, 29 days); November 10, 2008 to December 17, 2008 (one month, seven days); December 17, 2008 to March 4, 2009 (two months, 15 days); March 4, 2009 to May 26, 2009 (two months, 22 days); May 26, 2009 to October 27, 2009 (five months, one day); October 27, 2009 to January 13, 2010 (two months, 17 days); January 13, 2010 to March 8, 2010 (one month, 23 days); and March 8, 2010 to May 17, 2010 (two months, nine days).

11

second trial setting in order to enable him to conduct witness interviews, the Court of Appeals wrongly attributed the delay following the second trial setting of December 17, 2008 to the State. We disagree with the State and affirm the Court of Appeals on this issue. *See Ochoa*, 2014-NMCA-065, ¶ 11. The basis for the continuance was to enable Defendant to adequately prepare for trial. Defendant needed time to conduct witness interviews, which had been postponed three times. This was a legitimate reason for Defendant to seek to postpone the second trial setting, and the resulting two and one-half month delay does not weigh against him. *See Garza*, 2009-NMSC-038, ¶ 11 (" '[I]f either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed.' "). Further, the State did not oppose Defendant's request to continue the second trial setting. This period of delay was necessary to enable Defendant to adequately prepare for trial, and the request does not weigh against him under these circumstances.

{23}    The foregoing continuances resulted in almost eighteen months of delay, all of which were caused by negligent or administrative reasons. *See Barker*, 407 U.S. at 531 (explaining that such delay should be weighed less heavily but nevertheless weighs against the State). "As the length of delay increases, negligent or administrative delay weighs more heavily against the State." *Serros*, 2016-NMSC-

12

008, ¶ 29 (citing *Garza*, 2009-NMSC-038, ¶ 26 (quoting *Barker*, 407 U.S. at 531)). Here, the length of delay caused by negligent or administrative reasons was seventeen and one-half months—just under the *Garza* guideline for a complex case. *See Garza*, 2009-NMSC-038, ¶ 48. In other words, the majority of delay in this case falls into the "more neutral" category described in *Barker*. *See* 407 U.S. at 531. As such, we weigh this period slightly against the State.

**b.      Four and one-half months of neutral delay**

{24}      The fifth and sixth trial settings were vacated for reasons we determine to be "neutral." The resulting delay amounted to four and one-half months of neutral delay.

{25}      The fifth trial setting of October 27, 2009 was vacated because the district court judge's sister died, causing two and one-half months of delay. This delay is a classic example of what we consider "neutral" delay that weighs against neither party. *See, e.g.*, *O'Neal*, 2009-NMCA-020, ¶¶ 20-21.

{26}      The sixth trial setting of January 13, 2010 was delayed at Defendant's urging, as a furlough of employees of the Public Defender Department was expected to take effect on the third day of trial. In his motion to continue, Defendant stated that Governor Richardson had designated Friday, January 15, 2010 as a mandatory furlough day for all state employees and that defense counsel, a public defender, was

13

subject to the mandatory furlough. Defendant also noted that this Court, contrary to the Governor's mandate, had ordered public defenders to appear at hearings scheduled on the furlough day. Even so, Defendant asserted that defense counsel would be without support staff and unable to provide effective assistance at trial.

{27}     The district court granted the request to continue the trial "to ensure the [d]efense [c]ounsel ha[d] adequate support staff to prepare a defense." Defendant argued that the "mandatory furlough is an action by the State" and any resulting delay to the proceedings should weigh against the State. The Court of Appeals agreed with Defendant and weighed the ensuing months against the State. *See Ochoa*, 2014-NMCA-065, ¶ 10. We disagree with attributing this delay to the State for the following reasons.

{28}     In *Vermont v. Brillon*, the Supreme Court of the United States established the general rule that "delays caused by defense counsel are properly attributed to the defendant, even where counsel is assigned." 556 U.S. at 94; *id.* at 85 ("[D]elays sought by counsel are ordinarily attributable to the defendants they represent."). However, the *Brillon* Court foresaw an exception to the general rule where the delay results from a "systemic breakdown in the public defender system." *See id.* at 94 (internal quotation marks and citation omitted). The *Brillon* Court did not define the

14

contours of this exception.[5] *See id.* Thus, we must decide whether the furlough, which affected staff at the Public Defender Department for only one day of trial, constitutes a "systemic breakdown in the public defender system." *See id.* (internal quotation marks and citation omitted). We conclude that it does not.

{29}    Other courts have interpreted "systemic breakdown in the public defender system" to describe problems that are not only institutional in origin, but sufficiently serious to justify weighing the delay against the government. *See, e.g.*, *Weis v. State*, 287 Ga. 46, 694 S.E.2d 350, 354-55 (2010) (holding that funding problems did not amount to a breakdown of the entire public defender system when "lack of funding . . . was not the sole factor contributing to the delay"), *cert. denied*, *Weis v. Georgia*, 562 U.S. 850 (2010); *cf. United States v. Young*, 657 F.3d 408, 414-15 (6th Cir. 2011) (rejecting the argument that the district court's untimeliness was a "systemic failure" that should weigh against the State). We agree with this interpretation, and conclude that a "systemic breakdown in the public defender system" must be based upon

[5]The Court granted certiorari to determine whether a state's failure to fund counsel for an indigent defendant weighs against the State in *Boyer v. Louisiana*, 133 S. Ct. 1702, 1702 (2013) (per curiam), *dismissing cert. as improvidently granted*. However, the Court dismissed the writ as improvidently granted after determining that the record did not squarely present that issue. *See id.* at 1703 (concluding that most of the delay resulted from defense requests for continuances, other defense motions, and events beyond the control of either party).

15

problems that are both institutional in origin and debilitating in scope.

{30}     In the instant case, the furlough was initiated by the Governor and resulted from events beyond the control of the defense and the prosecution. *Cf. Brillon*, 556 U.S. at 94 ("The effect of these earlier events should have been factored into the court's analysis of subsequent delay."). Thus, the period of delay caused by the furlough was institutional in origin. However, the furlough was not so debilitating as to justify attributing the delay to the government.

{31}     The importance of adequately funding the institutions obligated to fulfill our constitutional responsibilities to accused persons cannot be overstated. *See Kerr v. Parsons*, 2016-NMSC-028, ¶ 40, 378 P.3d 1 (Vigil, J., specially concurring). However, we do not consider the delay caused by the instant furlough to be sufficiently onerous to constitute a "systemic breakdown of the public defender system." *See Brillon*, 556 U.S. at 94 (internal quotation marks and citation omitted). The furlough, which impacted only one day of a three-day jury trial and resulted in just two months of the entire two-year delay, is not the type of "systemic breakdown" contemplated by the *Brillon* Court. *Cf. State v. Brown*, 2015 WI App 90, ¶ 46, 365 Wis. 2d 608, 871 N.W.2d 867 (non-precedential) (concluding that there was no systemic breakdown when its public defender department left an unlicensed attorney

16

on a case for a short period of the delay).

{32}  Consistent with *Brillon*, we note that the "contrary conclusion could encourage appointed counsel to delay proceedings by seeking unreasonable continuances, hoping thereby to obtain a dismissal of the indictment on speedy-trial grounds." *See Brillon*, 556 U.S. at 93. Such a rule could create perverse incentives for defense counsel seeking to secure dismissal of a case. *See id.* In turn, "[t]rial courts might well respond by viewing continuance requests made by appointed counsel with skepticism, concerned that even an apparently genuine need for more time is in reality a delay tactic." *Id.* Defendant specifically asserted that he would lack the support of paralegals, secretaries, and investigators on the third day of trial. To weigh the ensuing delay against the State could fault the State for delay initiated by any defense attorney whose support staff were unavailable for trial. This result would be inappropriate where the State diligently persevered in moving the case forward, as in the instant case.

{33}  We also do not consider the fact that Defendant sought the continuance—due to the furlough—to be dispositive of this issue. As stated in *Brillon*, courts must account for the earlier factors in a sequence of events when determining the reasons for delay. *Id.* at 94 ("The effect of these earlier events should have been factored into

17

the court's analysis of subsequent delay."). The district court was justified in granting the continuance in anticipation of the furlough day. *See id.* We do not weigh this delay against a defendant "for the simple reason that an indigent defendant has no control over whether a [s]tate has set aside funds to pay his lawyer." *Cf. Boyer*, 133 S.Ct. at 1707 (Sotomayor, J., dissenting from dismissal of writ of certiorari). This analysis leads us to conclude that the two months following the furlough do not weigh against either party. We therefore conclude that this was a neutral delay.

**2.      Delay following the mistrial**

{34}     We proceed to consider the period after the mistrial. The mistrial occurred on March 8, 2010, two months before Defendant was convicted in a retrial. The district court found this period to be neutral, consistent with precedent then in force. *See O'Neal*, 2009-NMCA-020, ¶ 21 (weighing the period after a mistrial neutrally because it "[bore] no fault attributable to the parties"). Since then, this Court has announced that after a mistrial "the speedy trial clock does not begin to run anew—that is, the court does not have another [eighteen] months to schedule a [complex] case for retrial." *Castro*, 2017-NMSC-027, ¶ 21.

{35}     In *Castro*, we rejected the approach under which the speedy trial "clock" resets and runs anew from the date of the mistrial. *Id.*; *see, e.g.*, *State v. Strong*, 258 Mont.

18

48, 50, 851 P.2d 415 (1993). The "clock" approach does not adequately protect incarcerated defendants in the event of successive mistrials. *Reuster v. Turner*, 250 So.2d 264, 267 (Fla. 1971) ("A construction allowing for a continuing series of new demand periods reinstated in the event of each mistrial would . . . do violence to our organic guarantee of speedy trial . . . ."), *overruling Kelly v. State ex rel. Morgan*, 54 So.2d 431, 432 (Fla. 1951). It is also inconsistent with our obligation to consider the unique circumstances underlying each speedy trial claim, including the particularized prejudice facing each defendant. *See Barker*, 407 U.S. at 522 ("[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case."); *see also Garza*, 2009-NMSC-038, ¶ 13 ("Violation of the speedy trial right is only determined through a review of the circumstances of a case, which may not be divorced from a consideration of . . . the harm to the defendant . . . . ").

{36}     Nor did we adopt a second approach under which a mistrial is not a "trial" for speedy trial purposes, and defendants must be tried by a statutory deadline or released. *See, e.g.*, *Rider v. State*, 118 S.E.2d 749, 750 (Ga. Ct. App. 1961). The second approach conflicts with *Garza*, which "specifically rejects inflexible, bright-line approaches to analyzing a speedy trial claim." *See* 2009-NMSC-038, ¶ 13. It also

19

conflicts with our rejection of the presumption that the right to a speedy trial has been violated when the delay crosses a threshold of "presumptive prejudice." *See id.* ¶ 21. Like the "clock" approach, the second approach prevents a court from examining the particular circumstances of each case. We reject both of these approaches as inconsistent with our speedy trial jurisprudence.

{37}     *Castro* embodies a third approach. "Ordinarily the court should schedule the retrial as soon as its docket permits unless the parties justifiably require additional pre-retrial discovery or motions practice." *Castro*, 2017-NMSC-027, ¶ 21. In other words, a defendant must be brought to trial within a reasonable time following a mistrial. *See, e.g.*, *People v. Dixon*, 87 Ill. App. 3d 84, 43 Ill. Dec. 252, 410 N.E.2d 252, 256 (2d Dist. 1980) (concluding that the constitutional right to a speedy trial was not violated when the defendant was retried within a reasonable time). This approach is consistent with both *Barker* and *Garza*. In the event of a mistrial, district courts must consider and weigh the ensuing developments in accordance with the particularized circumstances of each case. *See Garza*, 2009-NMSC-038, ¶ 13; *see also Barker*, 407 U.S. at 530-31 (explaining that the speedy trial inquiry "is necessarily dependent upon the peculiar circumstances of the case").

{38}     In *Castro*, we were "particularly disturb[ed]" by a thirty-two month post-

20

mistrial delay. *Castro*, 2017-NMSC-027, ¶ 21. In contrast, the retrial occurred just two months after the mistrial in this case. No one can reasonably contend that the retrial did not occur in a reasonable amount of time.

{39}     We emphasize, however, the importance of timely disposition of cases. Boundless pretrial delay caused by the inefficiencies of those responsible for the fair and timely administration of justice has significant adverse consequences to the community and victims, as well as the accused. *Barker*, 407 U.S. at 519 ("[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused."). The effect of extended delay on determinations of truth and reliability "is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden." *Doggett*, 505 U.S. at 659 (O'Connor, J., dissenting). When the regular course of prosecution is interrupted by an unexpected turn of events, it should be rescheduled in the manner best designed to foster expeditious resolution of a case. *See Castro*, 2017-NMSC-027, ¶ 21.

{40}     In sum, under the second *Barker* factor, just under eighteen months of delay were caused by administrative reasons. This falls within the guidelines for a complex

case and therefore weighs only slightly against the State. *See Garza*, 2009-NMSC-038, ¶ 2 (setting eighteen months as the guideline for a complex case); *id.* ¶ 26 ("The degree of weight we assign against the State for [administrative] delay is closely related to the length of delay[.]"). Further, the four and one-half month delay caused by the unforeseen death and the furlough of the employees of the Public Defender Department is neutral delay and does not weigh against either party. Finally, the State brought Defendant to trial within a reasonable time after the mistrial. Therefore, the second factor does not weigh heavily against the State.

**C.      Assertion of the Right to a Speedy Trial**

{41}      The third *Barker* factor asks us to consider whether Defendant asserted the right to a speedy trial. 407 U.S. at 531-32. The district court has the discretion to weigh a defendant's assertion based on the circumstances of the case. *Id.* at 528-29. The frequency and force of the objections can be taken into account in considering the defendant's assertion, as well as whether an assertion is purely pro forma. *Id.* at 529. Pro forma assertions are sufficient to assert the right, but are given little weight in a defendant's favor. *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061.

{42}      In evaluating the third factor, this Court has also noted the importance of

22

closely examining the circumstances of each case. *Garza*, 2009-NMSC-038, ¶ 33. This includes accounting for a defendant's actions with regard to the delay, such as filing frivolous motions or procedural maneuvers. *See id.* ¶ 32. On one hand, a single demand for a speedy trial is sufficient to assert the right. *See, e.g., id.* ¶ 34. On the other hand, a defendant's assertion can be weakened by a defendant's acquiescence to the delay. *Id.* We also consider the consistency of a defendant's legal positions with respect to the delay. *See id.* ¶ 33.

{43}     In the instant case, Defendant filed five demands and four motions to dismiss for violation of the right to a speedy trial. These filings were interspersed with Defendant's requests to continue the second and sixth trial settings. However, Defendant failed to respond to the State's three petitions to extend the time to commence trial.

{44}     The State argues that Defendant weakened his assertion by requesting two continuances. We disagree. The Court of Appeals correctly concluded that the continuances sought by Defendant were the result of legitimate concerns in securing a fair trial for two reasons. *Ochoa*, 2014-NMCA-065, ¶ 19. The first was to ensure adequate time to prepare and review newly disclosed information. *See id.* ¶ 11. The second was because the third day of trial fell on a furlough day. *See id.* ¶ 19. We do

23

not expect a defendant to choose between a speedy trial and an adequate defense. *See Garza*, 2009-NMSC-038, ¶ 32 (citing *McNeely v. Blanas*, 336 F.3d 822, 831 (9th Cir. 2003)). Defendant did not weaken his assertion of the right to a speedy trial by requesting two continuances. *See Urban*, 2004-NMSC-007, ¶ 16 (holding that the defendant's request for a continuance did not "erase" his assertion of the right).

{45} Defendant did, however, dilute the strength of his assertion by failing to respond in a substantive manner to the State's three requests to extend the "six-month rule." *See* Rule 5-604(B)-(C) (Rule 5-604, the "six-month rule," requires the State to bring a defendant to trial within six months, but permits the district court to grant an extension for good cause.). Defendant did not file a response to any of these petitions. The first petition states that Defendant did not oppose the extension. The second petition states that Defendant opposed the extension and would file a response—but Defendant never did so. The third petition states that Defendant opposed the extension but "no hearing [was] necessary."

{46} Substantive responses are necessary to adequately inform the district court of each party's position so it can fully and fairly consider the merits of the request. By failing to assert a consistent position on the issue, Defendant acquiesced to the delay. *Garza*, 2009-NMSC-038, ¶ 34 (explaining that a defendant's "acquiescence to the

24

delay" can mitigate the strength of the assertion). Therefore, Defendant's lack of response to the State's three requests to extend the six-month rule tempered his assertion of the right to a speedy trial.

{47} Further, given the timing of the State's petitions, Defendant's silence muted his demands for a speedy trial. *See Garza*, 2009-NMSC-038, ¶ 33. Just one month before Defendant filed his first demand for a speedy trial, Defendant did not oppose the State's first petition for an extension. One day after filing his second demand for a speedy trial, Defendant did not respond to the State's second request for an extension. Finally, just days before filing his fifth demand for a speedy trial, Defendant did not respond to the State's third request for an extension. The timing of these demands, in relation to Defendant's acquiescence to the State's requests to continue the trial settings, is "reminiscent of Penelope's tapestry."[6] Therefore, we decline to weigh the third *Barker* factor in Defendant's favor.

**D. Prejudice**

{48} The final *Barker* factor requires us to examine the prejudice to Defendant. 407

---

[6]*United States v. Loud Hawk*, 474 U.S. 302, 314 (1986) (quoting Homer, The Odyssey, Book II, lines 91-105) (Richmond Lattimore trans., 1965) (comparing a defendant's actions to those of Penelope, the wife of Odysseus, who claimed she would accept a suitor when she finished a tapestry, but unraveled part of the tapestry every night)).

25

U.S. at 532. "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Id.* These interests are preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. *Id.* We examine these interests in light of the specific facts and circumstances of each case. *See id.* at 522.

{49}   We begin our analysis of the prejudice factor by noting two important facts. First, Defendant was incarcerated for two years before he was ultimately tried and convicted. Second, Defendant did not offer proof in the form of affidavits, testimony, or other documentation to support his prejudice claim. Thus, we are compelled to assess the prejudice factor with little assistance from Defendant. *See Garza*, 2009-NMSC-038, ¶ 35 ("[W]e will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers.").

{50}   On appeal, the State asserts that the Court of Appeals erred in creating a bright-line rule that twenty-two months of pretrial incarceration is unduly prejudicial even when a defendant fails to make a particularized showing of prejudice. The State asserts that the Court of Appeals wrongly emphasized the length of delay in concluding that Defendant was prejudiced:

> "With respect to pretrial incarceration, the question is whether the length of time was unacceptably long in that it became unduly prejudicial so as to factor into the analysis." *State v. Laney*, 2003-NMCA-144, ¶ 29, 134 N.M. 648, 81 P.3d 591. This Court previously concluded that a delay of twenty-two months prejudiced a defendant. *See State v. Moreno*, 2010-NMCA-044, ¶¶ 36-37, 148 N.M. 253, 233 P.3d 782 (considering twenty-two months of pretrial incarceration as the main factor in determining that the defendant was prejudiced). Here, Defendant was incarcerated even longer. This is the "precise kind" of prejudice the speedy trial right was intended to prevent.

*Ochoa*, 2014-NMCA-065, ¶ 23. For the reasons that follow, we reject the State's argument and agree with the Court of Appeals on this issue. In doing so, we address three interrelated issues: (1) What is the role of the length of pretrial incarceration in determining whether a defendant suffered prejudice; (2) Can we presume that a defendant suffered particularized prejudice when, as here, he failed to present affirmative proof in support of his prejudice claim; and (3) If so, what is the weight of such a presumption in the overall balancing test? We hold that Defendant was prejudiced as a result of his continuous pretrial incarceration, although this presumption does not dispose of the speedy trial claim.

{51}    Defendant was continuously incarcerated during the two years leading up to trial. As the *Barker* Court recognized:

> [There are] societal disadvantages of lengthy pretrial incarceration, [and] obviously the disadvantages for the accused who cannot obtain his

27

> release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. . . . The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences . . . is serious.

407 U.S. at 532-33 (footnotes omitted). "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Garza*, 2009-NMSC-038, ¶ 35 (citing *Barker*, 407 U.S. at 532-33). Because some degree of oppression and anxiety is inherent in every incarceration, "we weigh this factor in the defendant's favor only where the pretrial incarceration or anxiety suffered is undue." *Id.* ¶ 35 (citation omitted).

{52}     Consistent with *Barker* and *Garza*, the Court of Appeals properly considered the length of incarceration in determining whether there was oppressive pretrial incarceration. *See Barker*, 407 U.S. at 532-33; *Garza*, 2009-NMSC-038, ¶ 35 (citing *Barker*, 407 U.S. at 532-33). Although a defendant bears the burden of proving prejudice, this burden varies with the length of pretrial incarceration. *See Garza*, 2009-NMSC-038, ¶ 35 (explaining that a defendant "bear[s] the burden of production on this issue" (internal quotation marks and citation omitted)); *see, e.g., id.* ¶ 37

28

(concluding that the defendant made no showing of prejudice when he spent only two hours in jail and apparently offered no proof in support of his prejudice claim); *see also Spearman*, 2012-NMSC-023, ¶¶ 3, 39 (concluding that the record was too limited to determine whether there was prejudice when the defendant spent only one day in jail); *see Serros*, 2016-NMSC-008, ¶¶ 21, 90 (considering the defendant's testimony in its conclusion that four years of pretrial incarceration resulted in extreme prejudice).

{53}     Generally, mere allegations are insufficient to prove prejudice. *Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004) (stating that "[t]he burden of showing all types of prejudice lies with the individual claiming the violation and the mere 'possibility of prejudice is not sufficient' "). For example, the defendant in *Garza* spent only two hours in jail and did not offer proof in support of his prejudice claim. 2009-NMSC-038, ¶ 37. We held that the defendant "made no showing of prejudice" cognizable under the fourth *Barker* factor. *Id.* Likewise, the defendant in *Spearman* asserted that he lost employment opportunities, had to move, and eventually suffered bankruptcy due to the pending charges. 2012-NMSC-023, ¶¶ 38, 39. He offered no evidence in support of his assertions and spent only one day in jail. *Id.* ¶¶ 3, 39. This Court concluded that it could not determine whether the defendant was prejudiced due to

the lack of evidence in the record. *See id.* ¶ 39.

{54} However, lengthy and onerous pretrial incarceration may render affirmative proof unnecessary to find that the defendant suffered prejudice. *See, e.g.*, *Serros*, 2016-NMSC-008, ¶ 90; *State v. Brown*, 2017-NMCA-046, ¶ 37, 396 P.3d 171 (rejecting the State's argument that a defendant incarcerated for thirty-three months did not suffer particularized prejudice). In *Serros*, for example, the defendant testified that he was incarcerated for more than four years in custodial segregation. *See* 2016-NMSC-008, ¶ 88. We noted that "[the d]efendant's testimony easily establishes that the delay . . . caused him to suffer oppressive pretrial incarceration." *Id.* ¶ 90. However, we also acknowledged that the defendant's testimony was not essential to our conclusion that he suffered oppressive pretrial incarceration. *See id.* (describing the length of incarceration as "oppressive on its face"). Independent of the testimony describing his specific circumstances, the oppressive nature of the incarceration was self-evident based on the sheer length of incarceration. *See id.* Thus, the length of incarceration is a counterweight to a defendant's burden of production.

{55} The State incorrectly assumes that a court cannot find that a defendant has suffered prejudice when the defendant fails to present affirmative proof in support of his prejudice claim. Despite the emphasis in our recent jurisprudence on a defendant's

30

burden in showing prejudice, we have also acknowledged that a defendant need not always present affirmative proof in support of a prejudice claim. *Garza*, 2009-NMSC-038, ¶ 39 (stating that "in some circumstances, prejudice may be presumed" and that "[t]he presumption that pretrial delay has prejudiced the accused intensifies over time" (alteration in original) (internal quotation marks and citations omitted)); *id.* (recognizing that a defendant need not show prejudice when the other three *Barker* factors weigh strongly in his favor (citing *United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008))); *see also Moore v. Arizona*, 414 U.S. 25, 26 (1973) (per curiam) ("*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial[.]").

{56} The United States Supreme Court has expressly held that "consideration of prejudice is not limited to the specifically demonstrable[.]" *Doggett*, 505 U.S. at 655. In *Doggett*, the Court held that the defendant suffered *presumptive prejudice* as a result of an eight and one-half year delay. *Id.* at 655-58. "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655. Although the *Doggett* Court addressed the third type of prejudice—impairment of the defense—its reasoning is persuasive

31

with respect to Defendant's other prejudice claims. Pursuant to *Doggett*, a court can under certain circumstances presume that a defendant suffered some degree of prejudice even without affirmative proof. *Id.* at 655 (presuming that a defendant suffered prejudice and noting that certain forms of prejudice "can rarely be shown").

{57} We agree with the Court of Appeals that Defendant's two-year incarceration resulted in prejudice. *Ochoa*, 2014-NMCA-065, ¶ 23. Continuous pretrial incarceration is obviously oppressive to some degree, even in the absence of affirmative proof. *See Barker*, 407 U.S. at 532-33 (describing disadvantages for the accused as "obvious"). When, as in this case, a defendant was continuously incarcerated for an extended period of time, it requires no speculation to determine that the defendant suffered some prejudice. *Cf. Loud Hawk*, 474 U.S. at 304, 315 (1986) (holding that the prejudice to respondents who were neither under indictment nor subject to official restraint was too speculative to weigh in their favor). Therefore, we presume that Defendant was prejudiced simply by being continuously incarcerated for two years.

{58} We are unpersuaded by the State's argument that the length of delay is too short to presume prejudice. In support of this argument, the State relies on cases in which the defendants did not suffer oppressive pretrial incarceration. *See Barker*, 407

32

U.S. at 533-34 (finding no prejudice when the defendant was incarcerated for just ten months of the five-year delay); *Jackson*, 390 F.3d at 1258, 1263-65 (declining to presume prejudice when the defendant was incarcerated for just one year and nine months out of the four-year delay, without considering whether the defendant suffered oppressive pretrial incarceration); *United States v. Serna-Villarreal*, 352 F.3d 225, 232-33 (5th Cir. 2003) (holding that a delay of three years and nine months was too short to presume prejudice, without addressing whether the defendant was continuously incarcerated). These cases are distinguishable from the instant case.

{59} Nor are we convinced that the prejudice to Defendant is too speculative to consider in the speedy trial analysis. *See, e.g.*, *Loud Hawk*, 474 U.S. at 314. In *Loud Hawk*, a split court held that the mere possibility of prejudice was not sufficient to support the respondent's assertion that their speedy trial rights were violated. *See id.* at 315. The *Loud Hawk* respondents—unlike Defendant—were unconditionally released from custody. *Id.* at 308. Indeed, *Loud Hawk* expressly holds that the speedy trial right applies when defendants are subject to substantial restrictions on their liberty. *Id.* at 312 ("[T]he Speedy Trial Clause's core concern is impairment of liberty[.]"). We agree with the Court of Appeals that Defendant suffered "the 'precise kind' of prejudice" the speedy trial right is meant to prevent. *See Ochoa*, 2014-

NMCA-065, ¶ 23.

{60} But our inquiry does not end there. Though it is obvious that Defendant was prejudiced by virtue of his continuous incarceration, absent affirmative proof, we can only speculate as to the specific circumstances of his incarceration. *See Garza*, 2009-NMSC-038, ¶ 35. In *Serros*, for example, the defendant's testimony supported our determination that the pretrial incarceration resulted in extreme prejudice. *See* 2016-NMSC-008, ¶¶ 88-90 ("[The d]efendant's testimony easily establishes that the delay in his case caused him to suffer oppressive pretrial incarceration."). However, a defendant could conceivably suffer oppressive pretrial incarceration in a much shorter time, or suffer less prejudice during a longer period of incarceration. These particulars are unknowable in the absence of affirmative proof. With affirmative proof, Defendant could have provided the Court with a basis for concluding that he suffered extreme prejudice.

{61} Similarly, we can presume that Defendant suffered some degree of anxiety and concern, but can only speculate as to whether such prejudice was *undue*. *See Spearman*, 2012-NMSC-023, ¶ 39 (declining to hold that the defendant suffered undue anxiety based on the bare allegations of defense counsel); *see also Garza*, 2009-NMSC-038, ¶ 35 (requiring the anxiety to be undue in order to weigh in the

34

defendant's favor). Defendant did not offer affidavits, testimony, or documentation with respect to his specific circumstances of anxiety. Rather, Defendant argued that the State bore the burden of showing that he had not suffered anxiety or concern. Without this showing, we decline to speculate as to the particularized anxiety or concern he may have suffered. *See Garza*, 2009-NMSC-038, ¶ 35.

{62} We also presume that there was some impairment of the defense. *Doggett*, 505 U.S. at 655 (explaining that impairment of the defense may be impossible to prove). The *Doggett* Court explicitly recognized the concept of presumptive prejudice in the form of impairment of the defense, *id.* at 655, and the *Barker* Court described this as the "most serious" form of prejudice because "inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S. at 532. Fading witness memories are just one collateral effect of prolonged pretrial delay. *See id.* (noting the possibility that the defense could also be impaired by loss of exculpatory evidence). Nevertheless, Defendant was obligated to state "with particularity what exculpatory [evidence] would have been offered[.]" *Serros*, 2016-NMSC-008, ¶ 85 (first alteration in original) (internal quotation marks and citations omitted). Here, Defendant asserted that the memories of the alleged victims exhibited significant discrepancies over the course of the delay, and that one of the witnesses changed her

story. Defendant did not state with particularity what exculpatory evidence may have been offered.

**{63}** Finally, we must determine the weight of our presumption in the overall balance. Presumptive prejudice is not dispositive of the speedy trial claim. *See Doggett*, 505 U.S. at 656. "[P]resumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Id.* Rather, "it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id.*

**{64}** In conclusion, we presume that Defendant was prejudiced by his two-year, continuous incarceration. This prejudice is obvious and would be unjust to ignore. *Cf. Serros*, 2016-NMSC-008, ¶ 27 ("To weigh a delay of over four years against [the d]*efendant*—even slightly—[would be] simply unjust . . . ."). However, without knowing his specific circumstances, we would be strained to conclude that this prejudice prevails over the other three factors. Defendant bore the burden of showing particularized prejudice, *Garza*, 2009-NMSC-038, ¶ 35, which would enable this Court to weigh this factor more strongly in his favor. In the absence of such proof, this factor does not tip the scale in Defendant's favor. *See Doggett*, 505 U.S. at 656.

**E.     Balancing the *Barker* Factors**

36

{65} We conclude that, while Defendant was prejudiced by his two-year pretrial incarceration, neither the length of delay, reasons for delay, nor assertion of the right to a speedy trial weigh in his favor. We presume prejudice based on Defendant's continuous incarceration for an extended period before trial. Defendant's burden of showing particularized prejudice was counterbalanced by the length of his pretrial incarceration. Nevertheless, this presumption does not weigh strongly in Defendant's favor in this case. Thus, Defendant was not deprived of his right to a speedy trial.

{66} In short, our presumption that Defendant was prejudiced is simply not enough to tip the scale in favor of Defendant's speedy trial claim. Despite the prejudice to Defendant, the other factors do not weigh strongly in his favor. We therefore conclude that Defendant's right to a speedy trial was not violated.

**III. CONCLUSION**

{67} We reverse the Court of Appeals and reinstate Defendant's convictions.

{68} **IT IS SO ORDERED.**

_____

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**