This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35935**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**SAMUEL A. PADILLA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**M. ZAMORA, Chief Judge.**

**{1}**     Defendant was arrested on August 8, 2014, and charged with eight counts of criminal sexual contact of a minor (CSCM) in the third degree (child under 13), contrary to NMSA 1978, Section 30-9-13(A) (2003). On August 22, 2014, a grand jury indicted Defendant on those counts. Defendant eventually posted bond and was released from jail on several conditions, one of which prohibited him from having contact with any member of his family, including his wife. The jury trial in this case was initially scheduled for March 2, 2015, then rescheduled eight times, and eventually took place on April 4,

2016. On September 29, 2015, the State dismissed all but two of the eight counts against Defendant. Defendant was convicted of two counts of third degree CSCM, and he appeals those convictions. We affirm in part, reverse in part, and remand to the district court for a new trial.

## DISCUSSION

**{2}**    Defendant argues that the district court violated his right to a speedy trial and that the district court committed reversible error by allowing an expert to vouch for the Victim's credibility. We address each argument in turn.

## I.    Speedy Trial

**{3}**    Both the Sixth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, and Article II, Section 14 of the New Mexico Constitution guarantee a criminal defendant the right to "a speedy and public trial." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). When considering whether a defendant has been deprived of his right to a speedy trial, we use the four-factor test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), which "balanc[es] the length of delay, the reasons for delay, the defendant's assertion of the right to a speedy trial, and the prejudice to the defendant." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505. "We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo." *Id.*

## A.    Length of Delay

**{4}**    The length of delay in a speedy trial case is both a threshold question and a factor to be weighed with the other *Barker* factors. *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. The speedy trial right attaches when the defendant becomes an "accused," meaning either at the time of arrest or upon issuance of a charging document. *Salandre v. State*, 1991-NMSC-016, ¶ 13, 111 N.M. 422, 806 P.2d 562. The timeframe for bringing a case to trial depends on the complexity of the case: twelve months for simple cases, fifteen months for intermediate cases, and eighteen months for complex cases. *Garza*, 2009-NMSC-038, ¶ 2. These guidelines for bringing a case to trial do not dispose of the claim, but instead prompt further analysis of the remaining factors. *Ochoa*, 2017-NMSC-031, ¶¶ 13-14.

**{5}**    The district court determined, and we agree, that this case is one of intermediate complexity based on the number and type of charges and the number of witnesses. *See id.* ¶ 15 (stating that "[w]e defer to the district court's finding of complexity" when it is supported by the record); *State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (acknowledging that cases of intermediate complexity "involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence").

**{6}**     Defendant's speedy trial right attached when he was arrested on August 8, 2014. His trial began on April 4, 2016, amounting to a delay of twenty months—five months beyond the presumptively prejudicial threshold for intermediate cases. As a result, this delay weighs slightly against the State and we proceed to a consideration of the remaining *Barker* factors. *See Garza*, 2009-NMSC-038, ¶ 21 (explaining that a presumptively prejudicial length of delay triggers further inquiry into the remaining *Barker* factors); *State v. Montoya*, 2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820 (concluding that a twenty-one month delay in an intermediate case weighed slightly against the prosecution).

## B.     Reasons for Delay

**{7}**     When evaluating the reasons for delay under the second *Barker* factor, our courts have recognized four types of delay: deliberate delay, negligent or administrative delay, neutral delay, and defense delay. *Serros*, 2016-NMSC-008, ¶ 29. A deliberate attempt to delay the trial in order to hamper the defense is weighted heavily against the state, while negligent or administrative delay weighs less heavily, but still slightly, against the state. *See id.* ("As the length of delay increases, negligent or administrative delay weighs more heavily against the [s]tate."); *Garza*, 2009-NMSC-038, ¶¶ 25-26, 29 (stating that the extent to which negligent delay is weighed against the state depends on the length of delay, and explaining that the longer the delay, the more heavily it is weighed). Neutral delay, justified by a valid reason, does not weigh against either party, and delays initiated by the defense are generally weighed against the defendant. *Ochoa*, 2017-NMSC-031, ¶ 18. Overcrowded courts and congested dockets are considered a negligent or administrative delay because "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Garza*, 2009-NMSC-038, ¶¶ 26, 29 (noting that while it is weighed more lightly, negligence "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution" (internal quotation marks and citation omitted)). The weight we assign to negligent delay is related to the length of the delay. *Id.* ¶ 26. "Our toleration of such negligence varies inversely with its protractedness," and shorter periods of delay weigh only slightly against the State. *Id.* (alteration, internal quotation marks, and citation omitted).

**{8}**     We note that none of the delay in this case was attributable to Defendant. The State made three requests for continuance—each stipulating that any delay arising as a result of the continuances should be attributed to the State—all of which were granted. There is nothing in the record to indicate that Defendant objected to the continuances. The remaining delay occurred as a result of a congested court system and the district court's busy docket. *See id.* ¶ 29 (identifying congested court dockets as negligent delay to be weighed against the state). The total delay attributable to the State in this case being only five months longer than the permissible period for cases of intermediate complexity, we weigh this factor slightly against the State. *See id.* ¶ 30 (weighing this factor "only slightly in [the d]efendant's favor" when the delay was "negligent but not protracted," extending "only slightly" beyond the presumptively prejudicial length of delay threshold).

## C.   Assertion of the Right

**{9}**   Under the third *Barker* factor, we look to whether Defendant asserted his right to a speedy trial, including the frequency and force of Defendant's objections to delay, as well as whether an assertion of the right is purely pro forma. *See Ochoa*, 2017-NMSC-031, ¶ 41 ("Pro forma assertions are sufficient to assert the right, but are given little weight in a defendant's favor."); *Serros*, 2016-NMSC-008, ¶ 76 (considering the timeliness and vigor with which the right is asserted as an indication of whether the issue was raised on appeal as an afterthought); *Garza*, 2009-NMSC-038, ¶ 32 (stating courts assess the timing of the assertion and the manner in which the right was asserted). Additionally, "[t]he effect of a defendant's assertion of his speedy trial right may be diluted where his own actions caused the delay." *State v. Montoya*, 2015-NMCA-056, ¶ 22, 348 P.3d 1057. In determining the impact of Defendant's failure to object to the State's continuances, appellate courts must closely analyze the circumstances of each case. *See Garza*, 2009-NMSC-038, ¶ 33 (stating "a court should assign different weight to a situation in which the defendant knowingly fails to object, from a situation in which his attorney acquiesces in long delay without adequately informing his client" (internal quotation marks and citations omitted)).

**{10}**   Defendant asserted his right to a speedy trial eight times throughout the course of his case—six demands for speedy trial and two motions to dismiss for violation of his speedy trial rights—without ever opposing the State's requests for continuance. Although Defendant made six speedy trial demands and filed two motions to dismiss for violation of his speedy trial right, the timing of his assertions and failure to oppose the State's three continuances undermined and diluted his speedy trial assertions to some degree and as a result, this factor weighs only slightly in Defendant's favor.

## D.   Prejudice

**{11}**   The final *Barker* factor, prejudice to Defendant, is assessed in light of the interests that the speedy trial right is designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. *Ochoa*, 2017-NMSC-031, ¶ 48. Only the first two interests are at issue in this case. The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Garza*, 2009-NMSC-038, ¶ 35. Additionally, "an accused does not need to be in jail to suffer prejudice, [because] even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *State v. Spearman*, 2012-NMSC-023, ¶ 37, 283 P.3d 272 (internal quotation marks and citation omitted). "The heart of the right to a speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. Defendant bears the burden to demonstrate and substantiate prejudice. *Id.* ¶¶ 35-37.

**{12}**   First, Defendant argues that his five-month pretrial incarceration amounted to prejudice. However, Defendant does not provide any evidence of particularized

prejudice beyond anxiety generally suffered by incarcerated defendants. *See State v. Thomas*, 2016-NMSC-024, ¶¶ 15-16, 376 P.3d 184 (concluding the defendant failed to demonstrate particularized prejudice that would warrant reversal where he made no argument "as to why his anxiety was beyond that generally suffered by incarcerated defendants"). Thus, we cannot conclude that Defendant was subjected to oppressive pretrial incarceration.

**{13}** Second, Defendant contends that his conditions of release caused him prejudice because the conditions caused him to suffer from homelessness and a deprivation of his fundamental right to liberty marriage, family and safety as provided by the U.S. Constitution, federal case law, the New Mexico Constitution and state statute and case law. Defendant argues that his conditions of release prohibiting contact with his family, including his wife, caused him to suffer "anxiety, concern, and public obloquy." He asserts he had anxiety because he was "driven to homelessness and destitution by the district court's restrictive conditions of release." He also briefly asserts that the delay of the resolution of his case gave him anxiety about his lawful immigration status. Additionally, Defendant argues that the conditions of release interfered with his "right to maintain a relationship with his wife."

**{14}** However, Defendant's testimony was not sufficient to substantiate actual prejudice. Defendant testified that when he first got out of jail, he lived sometimes "on the streets," sometimes with friends, and sometimes in a hotel room. He testified that he did not go to the homeless shelters because he was afraid of consequences of others hearing "rumors" about his involvement in this case. Defendant also testified that he was depressed. Defendant's testimony did not explain with any detail or particularity his living conditions or his depression and anxiety. *See State v. Barela*, 2019-NMCA-005, ¶ 24, ___P.3d___ (concluding that a defendant's general assertion that he was prejudiced by the "inability to work or live his daily life" was insufficient to establish particularized prejudice (internal quotation marks omitted)). Likewise, the particular circumstances of Defendant's lost time with his wife and anxiety are scant and in the absence of any affirmative proof, we will not speculate. *See Ochoa*, 2017-NMSC-031, ¶¶ 60-61. Defendant's generic assertions regarding anxiety leave us unable to conclude he suffered anxiety so undue as to warrant weighing this factor in his favor. *See Garza*, 2009-NMSC-038, ¶ 35 (acknowledging that some degree of oppression and anxiety is inherent for every defendant who is jailed awaiting trial); *see also State v. Castro*, 2017-NMSC-027, ¶ 27, 402 P.3d 688 (recognizing "that the criminal process inevitably causes anxiety for defendants, but we focus only on undue prejudice").

**{15}** Although the length of delay exceeded the presumptively prejudicial threshold by five months, this factor nonetheless does not weigh in Defendant's favor because of his failure to articulate actual prejudice, failure to provide proof of prejudice, and reliance on speculation in all aspects of his prejudice arguments. *See State v. Gallegos*, 2016-NMCA-076, ¶ 31, 387 P.3d 296 (concluding that in the absence of a particularized showing of prejudice, the prejudice factor does not weigh in the defendant's favor).

**E.      Balancing the Factors**

**{16}** Because Defendant has failed to demonstrate any prejudice beyond the presumptive prejudice that arises from the delay, the other three *Barker* factors must weigh heavily against the State in order to find a speedy trial violation. *See State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230; *Garza*, 2009-NMSC-038, ¶ 39.The length and reason for the approximate five-month delay in this intermediate case weighs only slightly against the State. Although Defendant's assertions of his right to a speedy trial were slightly tempered by his failure to object to continuances and his filing of a couple of his assertions close to trial, his eight assertions nonetheless weigh slightly in Defendant's favor. However, because the length of delay only slightly weighed against the State, and because Defendant did not demonstrate actual prejudice, we conclude that the district court did not err when it denied Defendant's motion to dismiss for speedy trial violations.

## II.    Bolstering Testimony

**{17}** Defendant argues that the district court committed reversible error when it allowed an expert witness to testify in a way that vouched for the victim's credibility. The State concedes that the admission of the testimony was error warranting a new trial. Although we are not bound by the State's concession, having reviewed Defendant's argument and the record on appeal, we accept it. *See generally State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076 (accepting the state's concession regarding appellate issue despite appellate courts not being required to do so). We agree that the district court committed reversible error in admitting testimony bolstering the credibility of victim's testimony and that the error was not harmless. *See State v. Alberico*, 1993-NMSC-047, ¶ 85, 116 N.M. 156, 861 P.2d 192 ("[W]e expressly prohibit direct testimony regarding the credibility or truthfulness of the alleged victim of sexual abuse."); *see also State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110 ("Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful."); *State v. Fairweather*, 1993-NMSC-065, ¶¶ 19-20, 116 N.M. 456, 863 P.2d 1077 (holding that improper admission of expert testimony regarding sexual abuse victim's truthfulness was harmful because credibility was a pivotal issue at trial); *State v. Duran*, 2015-NMCA-015, ¶ 25, 343 P.3d 207 (stating that where "the improperly admitted evidence goes to the primary issue of credibility in a sexual abuse case, it is more likely to be prejudicial"). We therefore reverse and remand for a new trial.

## CONCLUSION

**{18}** Based on the foregoing, we affirm the district court's denial of Defendant's motion for violation of his right to speedy trial. We also conclude that the district court committed reversible error in admitting testimony bolstering the credibility of the alleged Victim and therefore reverse and remand this matter to the district court for a new trial.

**{19}    IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**