This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellant,

v.                            **NO. A-1-CA-33613**

**JOSEPH CARL KUPFER,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Reed S. Sheppard, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Joseph E. CampBell, Special Prosecutor
Edgewood, NM

for Appellant

Billy R. Blackburn
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**VANZI, Chief Judge.**

{1}     The State appeals the district court's dismissal of Defendant Joseph Carl Kupfer's criminal case on speedy trial grounds. On August 19, 2009, a grand jury indicted Defendant on fifty counts of criminal offenses related to his alleged involvement in the misappropriation of state funds connected to a federal grant administered by the Secretary of State's Office. The counts included, among other things, fraud, embezzlement, money laundering, tax evasion, and conspiracy. On January 17, 2014, after an evidentiary hearing on Defendant's motion to dismiss for a violation of his speedy trial rights, and nearly four years and five months after Defendant was indicted, the district court dismissed the case on speedy trial grounds. We affirm.

**BACKGROUND**

{2}     The underlying contract at issue in this case pertained to the allocation of federal funds for voter education. A comprehensive background section that largely reflects the relevant facts in this matter was set forth in *State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 1-5, 327 P.3d 1129. Because the procedural timeline of this case substantially mirrors that which is set out in *Vigil-Giron*, we have previously considered many of the State's arguments, the parties are familiar with the procedural and factual background, and because this is a memorandum opinion, we do not provide a detailed summary of the facts of this case. Rather, we pick up where we left off in our discussion of the facts in *Vigil-Giron*.

**{3}** We note that Defendant's case was initially joined with those of co-defendants Armando Gutierrez, Elizabeth Kupfer, and former Secretary of State Rebecca Vigil-Giron, pursuant to Rule 5-203(B) NMRA, until Vigil-Giron's case was severed on May 18, 2012. We highlight only pertinent facts and procedure in connection with the novel issues raised in this appeal that were not discussed in *Vigil-Giron*.

**{4}** On July 31, 2012, and after the severance order, the district court disposed of most of the parties' outstanding motions. Defendant's trial was set for October 19, 2012, but it was continued upon Defendant's request for a setting after his February 2013 federal trial on related charges.

**{5}** On November 14, 2012, the district court dismissed Vigil-Giron's case for a speedy trial violation. *Vigil-Giron*, 2014-NMCA-069, ¶ 1. On November 19, 2012, the court held a status conference and considered setting a trial date in Defendant's case, but never did. In January 2013, the district judge from the criminal division assigned to this case was transferred to the children's court division. Another judge was assigned but immediately recused. The case was then reassigned to the original judge on January 22, 2013, by order of the Supreme Court. In February 2013, Defendant was convicted of federal tax evasion charges. On June 24, 2013, the district court held another status conference and stated that trial should be set for late fall 2013. On July 31, 2013, Elizabeth Kupfer's case was dismissed on speedy trial grounds.

{6} On September 23, 2013, Defendant filed his motion to dismiss for violation of his right to a speedy trial. As previously noted, both Vigil-Giron's and Elizabeth Kupfer's cases had already been dismissed for speedy trial violations. The hearing on Defendant's motion to dismiss was originally set for October 18, 2013, but co-defendant Gutierrez died on October 15, 2013, and the hearing was continued upon the stipulation of counsel. The hearing was reset for December 10, 2013.

{7} On September 25, 2013, the district court held a status conference and scheduled pretrial motions. Defendant's trial was set for October 25, 2013, but the State moved to continue the trial setting because co-defendant Gutierrez would be serving his federal sentence at that time, and the State believed Defendant would be serving his federal sentence as well. Defendant did not concur in the State's motion. The district court continued the October 25, 2013 trial "until such time as Defendant[ and co-defendants] are released from [f]ederal [c]ustody or exercise their right to be tried while in [f]ederal [c]ustody at which time a new trial will be set."

{8} Defendant, who testified in his own behalf at the December 10, 2013 speedy trial hearing, was the sole witness at the hearing. Defendant testified that he suffered prejudice from the delay in bringing the case to trial. Among other things, he testified that: (1) he now suffers from various illnesses, including depression and digestive issues; (2) he became alienated from his friends; and (3) he was successfully employed in the public relations field prior to the indictment and operated his own

4

consulting business but has been unemployed since 2009. In relying on Defendant's testimony, the district court found that Hoyt Clifton, who died in July 2012 and was the Secretary of State's director of elections, dealt with Defendant "on a regular basis on a variety of issues over the years, including other contract work for the Secretary of State's office." The court further found that the contract at the center of the allegations in this case, which pertained to the allocation of federal funds for voter education, "was different from previous contracts because while on prior contracts Defendant had been a sole contractor, he was a subcontractor on this . . . contract." Although the court noted that Defendant and Clifton had minimal interactions on the contract, the court found that "Clifton would have been able to testify about Defendant's lack of involvement with the Secretary of State's office on this contract." In addition, the court found that Clifton was at several meetings that were attended by Defendant and other co-defendants.

{9}    Also in relying on Defendant's testimony, the district court found that co-defendant Gutierrez had hired Defendant as a subcontractor on the contract. The court additionally found that Gutierrez, who supervised Defendant and paid him, died in October 2013. Further, the court noted that Defendant and Gutierrez had minimal contact before working on the contract. The State did not provide any evidence to controvert Defendant's claims; although it cross-examined Defendant, it did not call its own witnesses.

5

{10}     On January 17, 2014, the district court entered an order dismissing Defendant's case for a speedy trial violation. The court's relevant speedy trial analysis is detailed in the body of this opinion.

{11}     The State appealed the speedy trial dismissals of Vigil-Giron and Elizabeth Kupfer, and we affirmed the district court in separate opinions. *See Vigil-Giron*, 2014-NMCA-069, ¶ 1; *State v. Kupfer*, No. 33,199, mem. op. ¶ 1 (N.M. Ct. App. Jan. 12, 2015) (non-precedential). As we note below, the State reiterates and relies on many of the same exact arguments we dispensed with in *Vigil-Giron* and *Kupfer*. For ease of reference, we summarize our discussion of these arguments in *Vigil-Giron* and *Kupfer* as relevant throughout this opinion.

{12}     On appeal, the State argues that (1) the district court erred in determining that "more than [twenty-four] months of delay are attributable to the State" and by not weighing delays caused by the co-defendants; (2) there was insufficient evidence to support the "[c]ourt's ruling that Defendant . . . suffered prejudice from the delay in bringing this case to trial, as opposed to the original indictment"; and (3) there was insufficient evidence to support the district court's determination that Clifton's and Gutierrez's deaths prejudiced Defendant's defense. We address each argument in turn.

{13}     Before addressing the State's arguments, we note that Defendant did not submit an answer brief; this despite that we granted Defendant seven extensions of time to do so, from the time that the brief in chief in this case was filed on October 6, 2014. On

6

October 26, 2017, this Court issued an order to submit the appeal upon the State's brief in chief. *See* Rule 12-312(B) NMRA ("If an appellee fails to file an answer brief as provided by these rules, the cause may be submitted upon the brief of appellant, and appellee may not thereafter be heard, except by permission of the appellate court."). Despite Defendant's failure to submit an answer brief, we proceed in our analysis. *See Mannick v. Wakeland*, 2005-NMCA-098, ¶ 39, 138 N.M. 113, 117 P.3d 919 ("[A]n appellee does not even have to file a brief, and the appellate court will review the case in accordance with the same favorable view of the proceedings below.").

**DISCUSSION**

**General Principles and Standard of Review**

{14}    The Sixth Amendment to the United States Constitution guarantees an individual accused of a crime the fundamental right to a speedy trial. *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. The New Mexico Constitution similarly protects a criminally accused's right to a "speedy public trial." N.M. Const. art. II, § 14.

{15}    New Mexico has adopted the balancing test from the United States Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972), for determining whether an accused's right to a speedy trial was violated. *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420. Pursuant to the *Barker* test, courts balance the conduct of the state and the defendant under four factors: "(1) the length of the delay; (2) the reasons

7

for the delay; (3) the timeliness and manner in which the defendant asserted his speedy trial right; and (4) the particular prejudice that the defendant actually suffered." *Smith*, 2016-NMSC-007, ¶ 58.

{16} In reviewing a speedy trial dismissal, we defer to the district court's factual findings, but review "the weighing and the balancing of the *Barker* factors de novo." *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272 (alteration, internal quotation marks, and citation omitted).

**Length of Delay**

{17} The first *Barker* factor, length of delay, serves a dual purpose in the speedy trial analysis: it is "both the threshold question . . . and a factor to be weighed with the other three *Barker* factors." *State v. Ochoa*, 2017-NMSC-031, ¶ 12, 406 P.3d 505. In order for a court to proceed under the *Barker* test, it must first consider whether the length of delay was presumptively prejudicial so as to trigger the speedy trial analysis. *Garza*, 2009-NMSC-038, ¶ 21. The relevant guideline for presumptively prejudicial length of delay depends on the complexity of the case: twelve months for simple cases, fifteen months for intermediate cases, and eighteen months for complex cases. *Ochoa*, 2017-NMSC-031, ¶ 12.

{18} The district court found that this case was complex and, therefore, the triggering length of delay was eighteen months. The district court's finding of complexity, to which we defer, is not challenged by the State and is supported by the number and

8

nature of the charges. *See id.* ¶ 15 (noting that the appellate courts defer to the district court's findings of complexity when the finding is supported in the record). Because the length of delay in this case surpassed the presumptively prejudicial length of delay of eighteen months, inquiry into the four *Barker* factors is required.

{19} The district court found that the delay in Defendant's case, which was nearly four years and five months, "exceeds the eighteen-month threshold . . . by almost an additional thirty-four months" when considering the time between the August 19, 2009 indictment and the court's January 17, 2014 dismissal order, and weighed the length of delay heavily against the State. *See Garza*, 2009-NMSC-038, ¶ 24 ("[T]he greater the delay the more heavily it will potentially weigh against the [s]tate."). Because the State does not challenge the district court's findings, they are conclusive. *See* Rule 12-318(A)(4) NMRA (stating that the district court findings are conclusive on appeal unless the appellant specifically attacks them).

**Reasons for Delay**

{20} The second *Barker* factor requires evaluating the reasons for the delay. *Ochoa*, 2017-NMSC-031, ¶ 18. "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *State v. Serros*, 2016-NMSC-008, ¶ 29, 366 P.3d 1121 (internal quotation marks and citation omitted). There are three types of delay: (1) deliberate delay by the government, which is weighed heavily against the state; (2) negligent or administrative delay,

which is weighed against the state, but less heavily than deliberate delay; and (3) delay caused by a valid reason, which is weighed neutrally and against neither party. *Ochoa*, 2017-NMSC-031, ¶ 18.

{21}     The State, curiously, challenges the district court's determination that "more than [twenty-four] months of delay are attributable to the State" and that the district court erred in not weighing delays caused by the co-defendants, primarily on the basis of arguments this Court dispensed with in *Vigil-Giron*. Specifically, the State argues that the district court should have addressed: (1) the changes of co-defendants' counsel; (2) Vigil-Giron's failure to file a request for hearing under Local Rule 2-123 for her motion to disqualify the Attorney General's Office; (3) the time it took to hear and resolve co-defendant Vigil-Giron's motion to disqualify; and (4) co-defendants' various motions as factors in the delay. This Court, in *Kupfer*, refused to consider these same arguments because we had already done so exhaustively in *Vigil-Giron*. *Kupfer*, No. 33,199, mem. op. ¶ 25. Although we too decline to analyze these arguments on grounds we have already considered, we summarize and reiterate our discussion of them in *Vigil-Giron*.

{22}     In *Vigil-Giron*, we addressed and rejected the state's argument that the district court should have weighed the co-defendant's substitutions of counsel in its speedy trial analysis. 2014-NMCA-069, ¶ 27. We concluded that "[t]he [s]tate does not provide any persuasive argument or authority to demonstrate that the co-defendants'

10

counsel-substituting activities, which occurred within the period of negligent or administrative delay during which a number of motions were pending, should be weighed neutrally." *Id.* ¶ 29. In particular, we noted our agreement with the district court and stated that the co-defendants' substitutions of counsel were essentially irrelevant to our analysis of the reasons for delay because those substitutions occurred during a time period where there were numerous outstanding motions, including the disqualification motion. *See id.* ¶ 28 ("It seems obvious that while the disqualification motion, along with many other motions, was pending, the case against [Vigil-Giron] could not have gone to trial as scheduled. Because the matter of who would be prosecuting the case was not resolved until July 27, 2011, when a special prosecutor was finally appointed, we see no basis on which to conclude that the trial could have commenced earlier.").

{23}     We also considered the state's unpreserved argument regarding Vigil-Giron's failure to file a request for hearing on her motion to disqualify the attorney general, noting that "there is no indication from its order that the district court considered the alleged violation of Local Rule 2-123 to be a factor in the delay[,]" and concluding that "we see no basis on which to conclude that the court erred in this regard." *Vigil-Giron*, 2014-NMCA-069, ¶ 34.

{24}     Furthermore, in *Vigil-Giron*, we disagreed with the state that the delay in ruling on the disqualification motion should be weighed against Vigil-Giron. *Id.* ¶ 35. We

11

noted the absence of cited authority "suggest[ing] that protracted or unreasonable delay in hearing and resolving a defense motion should be weighed neutrally." *Id.* ¶ 36. We also emphasized that "relevant authority supports the conclusion that the [district] court properly weighed the unreasonable delay from the court's untimely ruling upon the motion against the [s]tate." *Id.*

{25} As to the State's contention that the district court abused its discretion in failing to weigh delays caused by co-defendants against Defendant, the State's arguments are identical to those referenced above, specifically as they relate to Vigil-Giron's failure to file a request for hearing pursuant to a local rule and the co-defendants' substitutions of counsel. Further, we rejected the state's verbatim and undeveloped argument in *Vigil-Giron* that "the defendants filed no less than forty-five substantive motions in this case," and we observed that the state's general argument was "substantially lacking supporting citations to the record[.]" *Id.* ¶ 30 (omissions, alterations, and internal quotation marks omitted). Here, the State's argument is also undeveloped and is lacking in record proper citations as well as citations to supporting legal authority. We pause, however, to stress that we do not review the district court's weighing of the reasons for delay for an abuse of discretion, but rather, de novo. *See Ochoa*, 2017-NMSC-031, ¶ 4 ("We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo."). Moreover, the case cited by the State, *State v. Wilson*, 2010-NMCA-018, 147 N.M. 706, 228 P.3d 490,

12

does not stand for the proposition that delays caused by co-defendants should be weighed against the defendant. *See id.* ¶ 43 ("[A]ssum[ing] without deciding that reasonable delays caused by co[-]defendants will weigh against the [s]tate.").

**{26}** Because we have not previously considered this argument, we will address the State's contention that the district court did not factor delays associated with Defendant's federal case into its speedy trial analysis. In particular, the State argues that the entire twelve months between October 2012 and October 2013 should have weighed against Defendant.

**{27}** The district court effectively parsed the twelve months between October 2012 and October 2013 into four relevant time periods. First, and contrary to the State's argument, the court did consider the delays associated with Defendant's federal case as it found that the four months between October 2012 and February 2013 weighed against Defendant because he sought a continuance due to his approaching federal trial on related charges. Second, the court found that the four months between February 2013 and June 2013 was neutral and weighed against neither party because the "case [was] proceeding naturally." Third, the court found, without explanation, that the three months between the June 24, 2013 status conference and Defendant's September 23, 2013 motion to dismiss for a violation of his right to a speedy trial, weighed against the State. Fourth, the court noted that the time period including

13

October 2013 was neutral and weighed against neither party because the delay was caused by co-defendant Gutierrez's death.

{28}     The State specifically attacks the district court's finding that the three months between June 24, 2013 and September 23, 2013 weighed against the State. Although we note the absence of factual findings supporting the court's ruling in this regard, we will not consider the State's argument because the State fails to provide any supporting legal authority for its contention that the district court erred in weighing this time period against the State. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed . . . on appeal."). In any event, even if we concluded that the district court erred in weighing these three months against the State, our conclusion would not substantially disturb the court's analysis of the second *Barker* factor because the vast majority of the delay would still weigh against the State. *See State v. Brown*, 2017-NMCA-046, ¶ 28, 396 P.3d 171 (concluding that, where the government was "responsible for the most delay and the amount of delay caused by the [s]tate equals the eighteen-month presumptively prejudicial time period[,]" the reasons for delay weighed in the defendant's favor).

{29}     We will likewise not consider the State's argument that the district court erred in finding that the four months between February 2013 and June 2013 was neutral and weighed against neither party because the State provides no citation to any supporting

14

legal authority. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2. The only facts the State cites during this time frame relate to the scheduling of a status conference, and the State does not contend that Defendant contributed to the delay during these four months.

{30} The State additionally argues that the three months between Defendant's September 23, 2013 motion to dismiss for violation of his speedy trial rights and the December 10, 2013 motions hearing should be attributed to Defendant. However, the State has not provided any supporting legal authority for its contention that Defendant's motion to dismiss for a speedy trial violation is weighed against Defendant under the *Barker* test, and we will not consider its argument. *See id.* Although we observe "that the time required to respond to or hear a defendant's motion generally does not count against the government[,]" *Vigil-Giron*, 2014-NMCA-069, ¶ 35, the district court weighed the delay it took to hear Defendant's motion neutrally, not against the State.

{31} In sum, we conclude that the district court did not err in its speedy trial analysis for the time period between October 2012 and October 2013. And because the argument was not developed, we conclude that the district court did not err in weighing the delay caused by Defendant's speedy trial motion neutrally.

**Assertion of the Right**

15

**{32}** "The third *Barker* factor asks us to consider whether [the d]efendant asserted the right to a speedy trial." *Ochoa*, 2017-NMSC-031, ¶ 41. The district court found that this factor weighed lightly against the State, noting that Defendant only asserted his right twice in writing. Because the State does not attack the district court's finding on appeal, it is conclusive. *See* Rule 12-318(A)(4).

**Actual Prejudice to Defendant**

**{33}** Under the fourth *Barker* factor, we analyze the prejudice to the defendant. *Ochoa*, 2017-NMSC-031, ¶ 48. Prejudice is examined "in the light of the interests of defendants which the speedy trial right was designed to protect." *Id.* (internal quotation marks and citation omitted). There are three such relevant interests: (1) "preventing oppressive pretrial incarceration," (2) minimizing the accused's anxiety and concern, and (3) limiting the possibility of impairment to the defense. *Id.* The principal issue in this case is whether Defendant suffered prejudice due to an impaired defense.

**{34}** "The third interest, which *Barker* characterized as the 'most serious,' protects the defendant's ability to assert an adequate defense at trial from the prejudicial effect of the passage of time, such as the death or disappearance of a witness or the loss of memory." *Serros*, 2016-NMSC-008, ¶ 85.

**{35}** The State persists in arguing that the district "[c]ourt's ruling that Defendant . . . suffered prejudice from the delay in bringing this case to trial, as opposed to the

16

original indictment, is not substantially supported by the evidence." We considered this question at length in *Vigil-Giron* and held that "once the speedy trial analysis is triggered by the passage of time sufficient to cause presumptive prejudice[,] we may examine the prejudice suffered by [the d]efendant from the filing of the charging document until the district court hears the speedy trial motion." 2014-NMCA-069, ¶ 46; *see id*. ¶¶ 42-50 (considering the State's argument). And as we noted in the memorandum opinion affirming the dismissal of Elizabeth Kupfer's criminal case on speedy trial grounds, we "already considered and rejected the [s]tate's notion [in *Vigil-Giron*] that prejudice suffered prior to the presumptive-prejudice triggering date does not factor into a speedy trial analysis[.]" *Kupfer*, No. 33,199, mem. op. ¶ 9; *see Vigil-Giron*, 2014-NMCA-069, ¶ 44 ("[T]he relevant time frame for a speedy trial analysis . . . extend[s] from the date of the criminal complaint to the date of dismissal."). We refuse to consider this argument for a third time and note that the State's failure to cite to this Court's discussion of the applicable issues in *Vigil-Giron* violates our Rules of Appellate Procedure. *See* Rule 12-318(A)(4) ("Applicable New Mexico decisions shall be cited.").

**{36}** The State next argues that there was insufficient evidence to support the district court's determination that the deaths of Hoyt Clifton and Armando Gutierrez prejudiced Defendant's defense. Clifton, who was the Secretary of State's director of

17

elections at the time of the allegations against Defendant, died in August 2012. Gutierrez, who was a co-defendant in this case, died in October 2013.

{37} We note first that the State again presents substantially similar arguments to those we considered in *Vigil-Giron* and *Kupfer*. We will consider the State's arguments only to the extent they merit separate review under the facts of this case.

{38} We discussed Clifton's role in this matter extensively in *Vigil-Giron*, 2014-NMCA-069, ¶¶ 57, 61-63. Of note, we rejected the state's tenuous argument that somehow the definition of "material fact" in summary judgment law should be applied in a speedy trial analysis to weigh the prejudice suffered by a defendant. *See id.* ¶ 60 ("The [s]tate provides no authority, nor are we aware of any, that requires or permits the summary judgment standard . . . to be imported as the [s]tate attempts here in an analysis of the prejudice suffered by a defendant from the loss of a witness in the context of a speedy trial analysis."). We further noted "the district court's view[ that] Clifton's importance in the decision-making process at issue in this case and his further involvement in the formation and administration of the at-issue contract was such that his absence from trial constituted an impairment to the defense." *Id.* ¶ 63.

{39} In relying on Defendant's testimony, the district court found that Defendant "made [a] sufficient showing Clifton could have supplied testimony likely helpful to Defendant's defense in this case." Specifically, the court found that Clifton was the head of the selection committee for the project at the center of the criminal allegations

18

and "was [a] central player" in certain relevant events. The district court further found that Clifton may have provided exculpatory testimony, and that "any discrepancy between Defendant's testimony and Clifton's testimony would have been for a jury to sort out." In addition, the court found that Clifton was present at meetings with Vigil-Giron and Gutierrez, and that Defendant testified that Clifton participated in administrating some aspects of the contract at issue. Moreover, the court noted that the State "listed [Clifton] on its witness list and conducted numerous pre-trial interviews with him."

**{40}** Although the State argues extensively that Clifton's testimony was not relevant, it does not specifically attack the district court's findings. Deferring to the district court's factual finding that Defendant suffered prejudice from the delay, *see Spearman*, 2012-NMSC-023, ¶ 19, we conclude that the district court's determination that Clifton's death presented the possibility of impairment to the defense is conclusive. *See* Rule 12-318(A)(4) ("The argument shall set forth a specific attack on any finding, or the finding shall be deemed conclusive. A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]"); *see also In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318 (noting that the question for us on appeal is whether "the [district] court's decision is supported by substantial evidence, not

whether the court could have reached a different conclusion"). We also direct the State to our discussion in *Vigil-Giron* of this precise issue. *See* 2014-NMCA-069, ¶ 64 ("In the absence of a direct attack by the [s]tate on the district court's findings, including a showing that the findings were not supported by substantial evidence, and including an argument, supported by the record, as to why the court erred in determining that the defense was impaired by . . . Clifton's absence, the court's determination in this regard is conclusive.").

{41} Turning to the State's argument that the district court erred in finding that Defendant's case was prejudiced by Gutierrez's death, we observe that the court's conclusive finding that Clifton's death prejudiced Defendant's defense is dispositive of the third *Barker* factor. It is therefore unnecessary to evaluate whether Gutierrez's death further impaired Defendant's defense. We pause to note, however, that our Supreme Court has characterized prejudice resulting from an impaired defense as the "most serious" variety of prejudice and that "prejudice is obvious" when a witness dies during the delay. *Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). The district court found that "Gutierrez employed Defendant as a subcontractor through an oral contract. [Gutierrez] was also the individual who disbursed funds to Defendant as part of that contract." The court additionally found that "the transfer of funds between Gutierrez'[s] account and Defendant is central to [this] case."

20

**{42}** Gutierrez's death prevented Defendant from providing testimony of Defendant's supervisor and primary contact on the project at issue in this case. As the district court indicated, any prejudice resulting from Gutierrez's death only compounds and exacerbates the prejudice Defendant suffered from Clifton's death.

**Weighing the Factors**

**{43}** Because each of the four *Barker* factors weigh against the State, we conclude, under the facts of this case, that Defendant's case was properly dismissed on speedy trial grounds. *See State v. Montoya*, 2015-NMCA-056, ¶ 33, 348 P.3d 1057 (holding that where the length of the delay and reasons for the delay weigh moderately to heavily in the defendant's favor, and the defendant's assertion of the right and prejudice weigh slightly to moderately in the defendant's favor, and none of the factors weigh in the state's favor, the defendant's right to a speedy trial was violated).

**CONCLUSION**

**{44}** For the foregoing reasons, we affirm.

**{45}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

21

_____

**STEPHEN G. FRENCH, Judge**