This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40495**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**THOMAS BARKER a/k/a
THOMAS E. BARKER a/k/a
THOMAS EUGENE BARKER,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY
Melissa A. Kennelly, District Court Judge**

Raúl Torrez, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**    A May 17, 2018 criminal complaint, charged Defendant Thomas Barker with kidnapping, contrary to NMSA 1978, Section 30-4-1(A)(2), (4) (2003); criminal sexual penetration, contrary to NMSA 1978, Section 30-9-11(E)(5) (2009); aggravated battery, contrary to NMSA 1978, Section 30-3-5(A), (B) (1969); and larceny, contrary to NMSA 1978, Section 30-16-1(C) (2006). On May 11, 2022, following a hearing on Defendant's

second motion to dismiss for violating his right to a speedy trial and due process, the district court entered an order of dismissal on speedy trial and due process grounds. The State appeals from the order of dismissal. We reverse and remand.

**DISCUSSION**

**{2}** "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. In determining whether a defendant has been deprived of the right to a speedy trial, "we consider the four factors articulated in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)]: (1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505.

**I.      Length of Delay**

**{3}** We first determine whether the length of the delay is presumptively prejudicial. "The first factor, the length of delay, has a dual function: it acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being presumptively prejudicial, and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *Serros*, 2016-NMSC-008, ¶ 22 (internal quotation marks and citation omitted). Our Supreme Court has established benchmarks for presumptively prejudicial delay according to the complexity of a case: twelve months for a simple case, fifteen months for a case of intermediate complexity, and eighteen months for a complex case. *See State v. Garza*, 2009-NMSC-038, ¶¶ 47-48, 146 N.M. 499, 212 P.3d 387.

**{4}** The district court found that this is a simple case because it only involved witness testimony and police gathered no physical or scientific evidence after the alleged victim initially told them she had consensual sex with Defendant on the night the crimes may have occurred.1 *See State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (stating that "simple cases require less investigation and tend to involve primarily police officer testimony during the trial." (internal quotation marks and citation omitted)).

---

1Defendant filed two motions to dismiss for speedy trial violations. The district court denied the first motion. In the order denying Defendant's first motion, the district court found that this was a complex case. The district court did not explain why it changed the complexity designation in the order granting Defendant's second motion. The State asks us to consider the district court's initial findings regarding both the complexity designation and the findings on reasons for delay, but has cited no authority to explain why we should review an order that is not subject to appeal. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."). We therefore decline to consider the district court's findings in its order on Defendant's first motion to dismiss for a speedy trial violation.

**{5}**     The State contends the district court underestimated the complexity of the case and argues this is a case of intermediate complexity based on "the nature and number of crimes committed, [the alleged victim's] cognitive level, the sequencing of sexual acts, i.e., consensual acts followed by non-consensual acts, there being three crime scenes ([the alleged victim's] house, [the alleged victim's] van, and Defendant's mother's house), and the potential need to call experts who can testify to [the alleged victim's] cognitive function and to what is or is not sexual consent." *See id.* ("Cases of intermediate complexity . . . seem to involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence."). We conclude that this appeal involves a simple case.

**{6}**     With regard to three crime scenes, the State does not explain how or why the transportation of the alleged victim from her home to Defendant's mother's home, in the alleged victim's van, complicates the case. The investigating officer did not examine or gather evidence from those locations, except to photograph ligature marks on the alleged victim's arms where Defendant had ostensibly tied her up. We decline to make an argument for the State explaining why the three crime scenes themselves complicate the case.

**{7}**     We next turn to the assertions that there was a potential need to call expert witnesses and that the nature and numbers of the charges complicate the case. In the proceedings below, the State did not identify any expert witnesses it intended to call to discuss the alleged victim's cognitive level, her testimony regarding consensual following nonconsensual acts, or any other matter. The State's last amended witness list, filed in November 2019, only identified four witnesses; the alleged victim, an officer, Charlie Romero, and April Stout, none of whom were experts, and Charlie Romero died in April 2021. Thus, at the time the district court granted Defendant's motion to dismiss for violation of Defendant's speedy trial rights, the State was proceeding forward on all of the charges with only two witnesses, neither of which were experts. Given that the only physical evidence collected at the scene consisted of photographs, the absence of scientific evidence, and that the State was proceeding with two witnesses, we are not persuaded that the nature and number of the charges complicated the case. We therefore "defer to the district court's finding of complexity." *Ochoa*, 2017-NMSC-031, ¶ 15; *see State v. Flores*, 2015-NMCA-081, ¶ 6, 355 P.3d 81 (observing that district courts are in the best position to make complexity determinations). Accordingly, the threshold for triggering a speedy trial analysis in this simple case was twelve months from the date Defendant's speedy trial rights attached. *See Garza*, 2009-NMSC-038, ¶ 2.

**{8}**     "In general, the right [to a speedy trial] attaches when the defendant becomes an accused, that is, by a filing of a formal indictment or information *or arrest and holding to answer*." *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (emphasis added) (internal quotation marks and citation omitted). Defendant's speedy trial rights attached on April 4, 2018, the date he was served with an arrest warrant on the original charges in this case. At the time of this service, Defendant was in jail in an unrelated case. The district court granted Defendant's motion to dismiss on May 11,

2022. Therefore, the forty-nine months and seven days of delay in this case exceeded the presumptive twelve-month threshold by a little over thirty-seven months. Because the delay was presumptively prejudicial, we continue with our *Barker* analysis.

**{9}** "[T]he greater the delay the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24. The approximate forty-nine months of delay was over four times as long as the twelve-month threshold for simple cases. We therefore agree with the district court's characterization of the delay as extraordinary and weigh this factor heavily against the State. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 19, 65, 327 P.3d 1129 (concluding that the length of delay, which was twice as long as the length of delay considered to be presumptively prejudicial, weighed heavily against the state).

## II.    Reasons for Delay

**{10}** The reasons for the delay "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). "There are three types of delay that may be attribut[able] to the [s]tate, and are weighed against it in varying ways." *State v. Castro*, 2017-NMSC-027, ¶ 22, 402 P.3d 688. First, deliberate attempts by the state to delay the trial and hamper the defense weigh heavily against the state. *Id.* Second, "negligent or administrative delay should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Serros*, 2016-NMSC-008, ¶ 29 (omission, internal quotation marks, and citation omitted). And third, there are "appropriate" delays for which there is "a valid reason, such as a missing witness." *Id.* (internal quotation marks and citation omitted). These are delays that are considered neutral and do not weigh against the state. *Id.* Finally, delay caused by the defense weighs against the defendant. *Id.*

**{11}** The district court's order contains inconsistent statements about how it weighed various time periods against the parties to conclude that this factor weighed heavily against the State.2 By way of de novo review, we independently reweigh the reasons for

---

2The order initially weighs various time periods throughout the forty-nine month delay against both parties, but appears to ultimately conclude that all of the time that elapsed after November 2019 weighed against the State. The order states "out of the [forty-nine] months of delay in bringing this matter to trial, a conservative estimate of [twenty-nine-and-one-half] months of delay is attributed to the [State], while four months of the delay is attributed to the defense, and the remainder of the delay is attributed to neutral reasons such as COVID-19, the alleged victim's incompetency issues, and typical early-stage administrative delay in setting the case for trial." The district court further noted, "had the State included . . . Romero on its witness list early in the case instead of [in November 2019,] nineteen months after the initial investigation, much of the delay in this case could have been avoided. Defense counsel Ben Mondragon could have been substituted early in the case, and this case could have gone to trial prior to the onset of the COVID-19 pandemic, the alleged victim's competency issues, . . . Romero's death, and defense counsel Sarah Montoya's termination of her contract with the Law Offices of the Public Defender. For these reasons, *all of the delay* after the State's late witness disclosure may fairly be attributable to the State's negligence, which would make the State responsible for all of the delay that has occurred after

delay. *See Spearman*, 2012-NMSC-023, ¶ 19 ("[W]e give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." (alterations, internal quotation marks, and citation omitted)). We identify several periods of pretrial delay for our review of this case.

## A.      April 4, 2018 to February 15, 2019

**{12}**    During this period the case proceeded normally with the State initiating the case in Magistrate Court on April 4, 2018, followed by a preliminary hearing later that month in which the magistrate found probable cause to bind over Defendant to district court on the charges of false imprisonment, aggravated battery, and unlawful taking of a motor vehicle. The State dismissed the magistrate case in May 2018 and filed a criminal complaint the following day in district court with the additional charges of first degree kidnapping, second degree criminal sexual penetration, larceny, and the prior aggravated battery charge. A week later, the State requested a preliminary hearing.

**{13}**    The district court appointed the New Mexico Public Defender to represent Defendant and Ben Mondragon entered his appearance on May 29, 2018, and represented Defendant during the June 2018 preliminary hearing. The State filed a criminal information on June 5, 2018. The State then filed pleadings one normally expects to see filed in a criminal case, including a notice of open file for discovery and production, a motion for discovery, a demand for notice of alibi, a request to interview witnesses, a witness list, and a certificate of compliance.

**{14}**    The district court filed notice of a status hearing for August 28, 2018. During that status hearing, the district court stated that it had been informed of a potential plea and asked where the case stood. The State replied that a global plea encompassing all of Defendants drug cases had been out for some time. Defense counsel stated that he would speak to Defendant but was not confident there would be a mutual agreement.

**{15}**    Defendant rejected the plea offer and the district court scheduled a jury trial for February 2019. On February 14, 2019, the district court entered an order granting the State's motion to quash the transportation order for the February 18, 2019, hearing. On February 15, 2019, the State filed a motion to quash the transportation order, asserting that a motion and order for continuance for the February 18, 2019, jury trial had been filed with the court. Neither the motion for a continuance nor the order granting the continuance appears in the record. Neither party identifies who made the motion, why the continuance was sought, or whether the district court ordered a continuance sua sponte.

**{16}**    Until the February 18, 2019, trial date was continued, the case was progressing normally and we therefore weigh this period of just more than ten months neutrally. *See State v. Parrish*, 2011-NMCA-033, ¶ 25, 149 N.M. 506, 252 P.3d 730 (weighing the delay neutrally when "the case progressed with customary promptness"); *State v.*

---

November 2019 in addition to the [State's] delay that occurred prior to November 2019. Such delay is weighed heavily against the State." (Emphasis added.)

*Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782 (concluding that because the case proceeded with customary promptness, the delay cannot be held against either party).

## B. February 16, 2019 to December 9, 2019

**{17}** The district court scheduled a jury trial on the September 2019 trailing docket. Defendant's case was not called and was then scheduled to commence in October 2019. We weigh the approximate eight-month delay resulting from the district court's overcrowded dockets slightly against the State as administrative delay. *See Garza*, 2009-NMSC-038, ¶ 29.

**{18}** During the September 30, 2019 docket call, defense counsel Ben Mondragon and Sarah Montoya appeared on behalf of Defendant in three unrelated cases. Ms. Montoya informed the district court that she had spoken to Defendant and that he would be accepting a global plea offer and Mr. Mondragon confirmed to the district court that Defendant would be accepting the plea. Defendant withdrew his acceptance of the plea offer and defense counsel filed a motion to continue the October 2019 date in order to prepare for trial and for transcription assistance.

**{19}** The district court scheduled trial to commence in November 2019. Defense counsel then sought and was granted another continuance in order to prepare for trial. The district court rescheduled trial for December 2019. We weigh this one-and-one-half-month delay against Defendant. *See State v. Deans*, 2019-NMCA-015, ¶ 10, 435 P.3d 1280 ("[A]ny delay caused by the defendant generally weighs against the defendant.").

**{20}** Prior to the December 2019 hearing, the State filed an amended witnesses list, identifying Charlie . . . Romero as a witness. Mr. Mondragon moved to withdraw as counsel because he represented Romero in another matter, and Defendant refused to waive the conflict. The district court granted a continuance of the December trial date in order to provide Defendant's new counsel, Ms. Montoya, time to prepare for trial. The district court reset the trial for March 2020. We defer to the district court's finding that the State's belated disclosure of its intent to call Romero as a witness led to the withdrawal and appointment of new counsel who needed time to prepare for trial. Therefore, we weigh the three-and-one-half months of administrative delay slightly against the State. *See Ochoa*, 2017-NMSC-031, ¶¶ 20, 22 (categorizing the period of delay caused by defense counsel's need to interview the state's witnesses after three postponements as administrative delay and explaining that it "was a legitimate reason" that "does not weigh against [the defendant]").

## C. March 23, 2020 to September 27, 2021

**{21}** Between March 2020 and September 2021, the district court rescheduled the trial ten times. Defendant requested three continuances during that time; once to allow his new counsel, Ms. Montoya, time to listen to the preliminary hearing recordings, which she had only recently received from Defendant's former counsel, and twice to

accommodate Ms. Montoya, who was involved in an accident and could not go to trial. These requests resulted in six months of delay, four of which we weigh slightly against the State as administrative delay, *see Ochoa*, 2017-NMSC-031, ¶¶ 20, 22, and two of which we weigh against Defendant. *See State v. Brown*, 2017-NMCA-046, ¶ 25, 396 P.3d 171 (weighing delay caused by defense counsel's unavailability against the defendant). The district court also delayed the trial for one month after Defendant noted that the alleged victim was unavailable to accommodate an evaluation for incompetence in another case. This month of delay weighs neutrally. *See Garza*, 2009-NMSC-038, ¶ 27 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay." (internal quotation marks and citation omitted)).

**{22}**    The remaining period of delay, approximately eleven months, was caused by administrative delays. *See Serros*, 2016-NMSC-008, ¶ 29. During this time, two attorneys for the State withdrew, which caused the district court to reset the trial four times over the course of five months. *See State v. Moore*, 2016-NMCA-067, ¶ 19, 378 P.3d 552 (weighing delay resulting from resignation of the state's assigned counsel as administrative delay). The other six months of delay weigh against the State because they arose from the district court's busy trial docket during the COVID-19 pandemic. *See Garza*, 2009-NMSC-038, ¶ 29. Of the eighteen-month period of delay we weigh one month neutrally, two months against Defendant, and fifteen months against the State. However, as the length of the delay increases, this type of delay begins to weigh more heavily against the State. *See Brown*, 2017-NMCA-046, ¶ 15.

## D.    September 27, 2021 to May 2, 2022

**{23}**    Prior to the September 2021 hearing, Ms. Montoya terminated her contact with the Law Office of the Public Defender and Amara Aaron replaced her as defense counsel. This change resulted in two more continuances and a two-month delay. We weigh this period against Defendant. *See Deans*, 2019-NMCA-015, ¶ 10.

**{24}**    In the three months between November 2021 and February 2022, defense counsel requested additional time for a hearing on Defendant's pro se speedy trial motion and moved for continuance to prepare for trial because she needed to conduct pretrial interviews. During the February docket call, the parties announced they had not yet been able to arrange pretrial interviews, thereby resulting in another month of delay into March 2022. This four-month period of delay weighs more heavily against the State as administrative delay. *See Ochoa*, 2017-NMSC-031, ¶¶ 20, 22 (categorizing delay caused by defense request for continuance to complete witness interviews as administrative delay as it was "a legitimate reason" and the resulting delay did not weigh against the defendant); *Brown*, 2017-NMCA-046, ¶ 17.

**{25}**    The final two months of delay arose after the district court held an emergency status hearing to follow up with the parties regarding discovery of another potential witness during the pretrial interview of the alleged victim. Defense counsel requested additional time for the district court to hear several new motions, including the motion to dismiss for a speedy trial violation that gave rise to this appeal. The State requested

additional time to interview the new witness, and the district court reset the trial for another month out. Defense counsel then requested another month to transcribe the preliminary hearings and pretrial interviews. Trial was moved to May 2022. We weigh this period as administrative delay against the State but more heavily. *See Garza*, 2009-NMSC-038, ¶ 11 ("[I]f either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed." (internal quotation marks and citation omitted)); *Ochoa*, 2017-NMSC-031, ¶¶ 20, 22; *Brown*, 2017-NMCA-046, ¶ 17.

**{26}**    In sum, of the forty-nine months of delay, we weigh thirty-two-and-a-half months against the State, five-and-a-half months against Defendant, and eleven months neutrally. We conclude the more-than four-year delay weighs heavily against the State for its protracted failure to bring the case to trial. *See State v. Taylor*, 2015-NMCA-012, ¶ 17, 343 P.3d 199 ("The weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness." (alteration, internal quotation marks, and citation omitted)); *State v. Montoya*, 2015-NMCA-056, ¶ 21, 348 P.3d 1057 ("[W]here the length of delay is presumptively prejudicial the state bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion." (internal quotation marks and citation omitted)).

### III.    Assertion of Right

**{27}**    The third *Barker* factor analyzes the degree to which a defendant has asserted their right to a speedy trial. *See Garza*, 2009-NMSC-038, ¶ 32. In analyzing whether a defendant has asserted their right to a speedy trial, we "accord weight to the frequency and force of the defendant's objections to the delay . . . [and] also analyze the defendant's actions with regard to the delay." *Id.* (internal quotation marks and citation omitted).

**{28}**    The district court found "Defendant adequately asserted his speedy trial right" with the filing of "at least two speedy trial demands and two speedy trial motions [to dismiss]. The State argues that the district court erred in weighing this factor in Defendant's favor because Defendant either moved for or acquiesced to the numerous continuances preceding trial, waited nearly four years to allege he was prejudiced by the delay, and asserted prejudice well after the witnesses had died.

**{29}**    Defendant filed three pro forma speedy trial demands. Pro forma assertions are sufficient to assert the right, but are given little weight in a defendant's favor. *See Urban*, 2004-NMSC-007, ¶ 16. Defendant filed a pro se motion to dismiss on speedy trial grounds in September 2020 and his counsel filed a second motion to dismiss on speedy trial grounds in April 2022**.** The State further argues that Defendant's first pro se motion to dismiss was nothing more than another pro forma request because neither contained a request for a hearing, nor did it allege particularized prejudice.

**{30}**    We agree that Defendant did not object to the numerous continuances in this case. Defendant was physically present at various hearings where his counsel either

agreed to a continuance or requested a continuance. Defendant made no objection. Ultimately, we weigh this factor slightly in favor of Defendant because he did assert his right, although not forcefully. *See State v. Lujan*, 2015-NMCA-032, ¶ 18, 345 P.3d 1103 ("New Mexico courts . . . have concluded that a motion to dismiss based on speedy trial grounds is an assertion of the right that is weighed against the [state], although it is generally not weighted heavily.").

## IV.     Prejudice

**{31}**    Finally, we consider the prejudice factor which is "[t]he heart of the right to a speedy trial." *Garza*, 2009-NMSC-038, ¶ 12. "We analyze prejudice to a defendant in a speedy trial case in light of three defense interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Smith*, 2016-NMSC-007, ¶ 60, 367 P.3d 420 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. . . . Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citations omitted). Defendant bears the burden of demonstrating and substantiating a particularized showing of prejudice.

**{32}**    The district court ruled that "the extraordinary delay . . . and particularized prejudice" violated Defendant's speedy trial rights and concluded that, even if Defendant did not demonstrate particularized prejudice, the delay alone along with the reasons for the delay were enough to demonstrate a violation of Defendant's speedy trial rights. We disagree for the reasons that follow.

### A.     Oppressive Pretrial Incarceration

**{33}**    Whether pretrial incarceration is oppressive "depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Serros*, 2016-NMSC-008, ¶ 89 (internal quotation marks and citation omitted). While this case was pending, Defendant was serving a mandatory eight-year habitual offender prison term on an unrelated case. We therefore conclude that Defendant was not subject to oppressive pretrial incarceration. *See Urban*, 2004-NMSC-007, ¶ 17 (concluding that the defendant was not subject to oppressive pretrial incarceration when he was incarcerated on other charges at the time of his arraignment); *see also State v. Prieto-Lozoya*, 2021-NMCA-019, ¶ 47, 488 P.3d 715 (concluding, in part, that the defendant suffered little, if any, prejudice when the defendant "was in custody on other charges at the time of his arrest in this case and continued to be held on those charges during the vast majority of his pretrial incarceration").

### B.     Anxiety and Concern

**{34}** The district court found that Defendant suffered "unduly prolonged" stress and uncertainty over "the prospect of spending a substantial portion of his life in prison due to pending first and second degree felonies along with additional habitual offender enhancements." Yet, Defendant did not testify at the hearing to dismiss on speedy trial grounds and offered no evidence to support the district court's findings. In addition to noting the absence of evidence supporting the district court's findings, the State argues that neither Defendant nor the district court indicated how the prejudice Defendant suffered would be greater than that faced by other defendants, especially when Defendant's pretrial incarceration resulted from a conviction in a separate case.

**{35}** Defendant responds by emphasizing the district court's reliance on the extraordinary delay as proof that Defendant suffered the first kind of particularized prejudice—undue anxiety and concern. Defendant does not reference any portion of the record that would otherwise indicate he presented evidence of anxiety and concern. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). We therefore conclude that the district court's finding that Defendant suffered "unduly prolonged" "stress and uncertainty" was error because those findings were based on the district court's speculation and not on particularized showings of prejudice. *Compare Garza*, 2009-NMSC-038, ¶ 35 ("[W]ithout a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers."), *with Montoya*, 2015-NMCA-056, ¶ 32 (finding particularized prejudice where the defendant had presented sufficient evidence through his own testimony of undue anxiety and concern).

## C.    Impairment to the Defense

**{36}** Impairment to the defense is the "the most serious" type of prejudice. *Garza,* 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). The district court found that Defendant suffered particularized prejudice and impairment to the defense because two of the State's witnesses died and one of the witnesses that died during the delay was never interviewed or put on the record by either the prosecution or defense. As a result, Defendant lost the opportunity to obtain evidence "which could have been exculpatory." The district court faulted the State for its failure "to obtain any written or recorded statements," noting in particular that "whatever information [Romero] had about this matter is now lost." Based on its speculation that Romero might have provided exculpatory evidence, the district court concluded that Romero's death "unfairly impaired Defendant's ability to mount a defense."

**{37}** Finally, after observing the absence of scientific testimony and that the State's case would be based on the testimony of the alleged victim and officer, the district court found "Defendant's liberty hinges on live witness testimony that has deteriorated due to the passing of four years and the alleged victim's ongoing mental illness and incompetency issues."

**{38}** We turn first to the deaths of Stout and Romero. When a defendant asserts that the delay caused the unavailability of a witness and impaired the defense, the defendant must "state with particularity what exculpatory testimony would have been offered, and the defendant must also present evidence that the delay caused the witness's unavailability." *Id.* (alterations, internal quotation marks, and citation omitted). The State argues Defendant never made a proffer of what exculpatory evidence he would have obtained from either witness and that the mere possibility of prejudice is insufficient to demonstrate particularized prejudice. Defendant did not identify exculpatory statements that he could have obtained from the two witnesses and instead asserts that defense counsel "believed that . . . Romero, an eye witness, had exculpatory evidence." We note that during the years the case was pending Defendant never placed Romero on his witness list. Romero was listed as a witness only by the State late in the proceedings. Without a particularized statement from Defendant about exculpatory evidence, therefore, there is nothing in the record to suggest that Defendant was prejudiced by Romero's death. Indeed, his death precluded his testimony for the State, something Defendant fails to show prejudiced him.

**{39}** We, therefore, conclude that the district court's finding of particularized prejudiced, based entirely on the "possibility" that the witnesses could have provided exculpatory evidence was error. *See id.*; *see also Urban*, 2004-NMSC-007, ¶ 18 (declining to find prejudice where "[the d]efendant's claims with respect to lost witnesses [were], at best, speculative"). Having so concluded, we do not address the State's remaining arguments on this issue and turn next the district court's finding of prejudice arising from the alleged victim's mental state.

**{40}** The district court found prejudice resulting from the alleged victim's deteriorating mental state and incompetency issues. The parties do not dispute that the alleged victim's competency to stand trial was evaluated in an unrelated case. "A criminal defendant is competent to stand trial if he understands the nature and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense." *State v. Herrera*, 2001-NMCA-073, ¶ 31, 131 N.M. 22, 33 P.3d 22 (internal quotation marks and citation omitted). In this case, however, the alleged victim was going to serve as a witness, and "[t]o be competent, a witness is required to have a basic understanding of the difference between telling the truth and lying, coupled with an awareness that lying is wrong and may result in some sort of punishment." *State v. Hueglin*, 2000-NMCA-106, ¶ 24, 130 N.M. 54, 16 P.3d 1113 (internal quotation marks and citation omitted).

**{41}** During the hearing on Defendant's motion to dismiss, defense counsel presented no evidence regarding the alleged victim's "ongoing mental illness" or competency to testify as a witness. Instead defense counsel argued "as the [district] court is aware [the alleged victim] was found incompetent" and then proceeded to state that counsel's review of the alleged victim's testimony during the two preliminary hearings in this case revealed inconsistencies. Because defense counsel made no particularized showing of the alleged victim's lack of competency to testify, or ongoing mental deterioration that

would affect her competency to testify, we conclude that the district court's finding of prejudice on these ground was error.

**{42}** Ultimately, Defendant failed to show particularized prejudice.

## V. Balancing the *Barker* Factors

**{43}** We hold that the district court erred in determining that the delay of more than four years in this case prejudiced the Defendant and violated his right to a speedy trial because Defendant failed to show particularized prejudice, and the other three factors do not weigh heavily in his favor. *See State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230 ("To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the [s]tate.").

## CONCLUSION

**{44}** For the reasons stated above, we reverse and remand for further proceedings consistent with this opinion.

**{45}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**I CONCUR:**

**MICHAEL D. BUSTAMANTE, Judge,
retired, Sitting by designation**

**JANE B. YOHALEM, Judge (dissenting).**

**YOHALEM, Judge (dissenting).**

**{46}** The majority opinion concludes that Defendant must make a particularized showing of prejudice even though the first two *Barker* factors—the length of the delay and the reasons for the delay—weigh heavily in favor of Defendant and against the State, and the third factor—the assertion of the delay—weighs in Defendant's favor albeit not heavily. I do not agree with the majority that the test established by our Supreme Court in *Garza* requires that all three of the first three factors weigh heavily in a defendant's favor before prejudice may be presumed based on a generalized showing. Our Supreme Court held in *Garza* that where the "the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted [their] right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." 2009-NMSC-038, ¶ 39. Although our Supreme Court in *Garza* discusses jurisdictions that have held that all three of the first three *Barker* factors must weigh heavily in the defendant's favor, the Court does not ultimately adopt this bright-line approach. *Garza*

requires instead that the first two *Barker* factors weigh heavily in the defendant's favor. As to the third factor—the assertion of the right—the defendant need only show that they have "asserted [their] right, and not acquiesced to the delay." *Id.*

**{47}** This approach is consistent with the United States Supreme Court's decision in *Doggett v. United States*, 505 U.S. 647 (1992), a case relied on by *Garza*, where the Court found a speedy trial violation based on excessive delay attributed to the negligence of the state, weighing heavily in favor of the defendant on the first two factors. Even though the defendant did not forcefully assert his speedy trial rights, the Court presumed prejudice based on the defendant having asserted his right and not having acquiesced in the delay.

**{48}** I recognize that both this Court and our Supreme Court have construed *Garza* to require that all three *Barker* factors weigh heavily in favor of the defendant before prejudice will be presumed. *State v. Prieto-Lozoya*, 2021-NMCA-019, ¶ 50, 488 P.3d 715; *State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579; *State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230. None of these decisions, however, arose in a case where the first two *Barker* factors weighed heavily in favor of the defendant and the decision, therefore, turned on whether the third factor must also weigh heavily in favor of Defendant. This is the first time I am aware of that either of our appellate courts was required to apply the *Garza* language to the third factor where the application of that factor is dispositive.

**{49}** Because I do not agree with the majority's conclusion that all of the first three factors must weigh heavily in Defendant's favor, I would affirm the district court's decision dismissing this case on speedy trial grounds without a particularized showing of prejudice. I, therefore, respectfully dissent.

**JANE B. YOHALEM, Judge**